**UNITED STATES of America, Plaintiff,**

**v.**

**Daniel Ray WENZEL, Defendant.**

**Crim. No. 4–80–10.**

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 29, 1980.

Thorwald H. Anderson, Jr., Asst. U. S. Atty., Minneapolis, Minn., for plaintiff.

Scott F. Tilsen, Minneapolis, Minn., for defendant.

## ORDER

MacLAUGHLIN, District Judge.

This matter comes before the Court on defendant's objections to a report and recommendation of Magistrate J. Earl Cudd, dated February 8, 1980.

The defendant in this case is charged with three robberies of the Summit National Bank in St. Paul. During the third robbery a bank officer followed the robber from the bank and saw him enter a 1977 or 1978 Chrysler or Plymouth automobile, Minnesota license number AJF 112. The information was transmitted to two St. Paul police officers in the area, Officers Miske and Sassor. The officers also received a description of the suspect; allegedly he was a white male, approximately 5'11", weighing about 150 pounds, with dirty light brown hair, long pointed nose, wearing a three-quarter length brown or reddish plaid jacket.

The license number was familiar to the officers because they had previous dealings with someone driving that automobile named Renee Sauro. (Tr. 111).[1] The officers also knew that the car belonged to Mary Tiessen, who is apparently Sauro's mother. (Tr. 111). At the time of the officers' contact with Sauro, Tiessen lived at 200 Edmund Street in St. Paul. (Tr. 111). The police officers did not go to that address because they were aware that all of the older homes in that area were being torn down, making it improbable that Tiessen still lived there. Instead, the officers went to a post office substation in the area and obtained Tiessen's new address. (Tr. 112).

It was determined that Mary Tiessen lived at 120 West Iowa. The officers proceeded to that address, noted that a red Plymouth, with Minnesota license number AJF 112, was parked in front of the residence (Tr. 112), and went to Tiessen's apartment. There is conflicting testimony as to the subsequent events.

William R. Miske, one of the police officers, testified that he or his partner "knocked on the door . . . [and] [t]he door swung open. It wasn't completely latched shut." When asked to describe what he then saw, Miske replied, "There were two women in nightclothes just inside the apartment. We stepped in and asked if Renee was home. . . . And at that point a white male matching the description stepped out of a rear bedroom or bathroom area in the hallway." (Tr. 113). Daniel Wenzel was thus arrested.

The testimony of Mary Tiessen differs substantially from Miske's account. She stated that she was reclining on the couch at the time she first saw the police officers. To the best of her knowledge, the door was closed. Both the lock and the doorknob were in working order. Tiessen claimed that she heard no knock before the law enforcement officials entered. She further alleged that she never gave the two officers permission to enter her apartment and, in fact, told them to leave when she first saw them. (Tr. 92–93).

After the arrest, a partial search of the apartment occurred, which produced certain

1. The abbreviation "Tr." refers to pages in the transcript of the suppression hearing held before Magistrate Cudd on January 29, 1980.

pieces of clothing allegedly worn by the robber. A warrant was later obtained and the resulting search produced more evidence. Following the arrest, bank tellers identified Wenzel as the robber through a line-up and photographic spread.

Defendant has moved to suppress the fruits of the arrest on the ground that the arrest was illegal, because it occurred during an unlawful entry into the Tiessen apartment. The Magistrate denied the motion. The Court believes that defendant's motion to suppress on the basis of an unlawful entry is meritorious.

■ It is now settled that the Fourth Amendment requires police officers to obtain a warrant before entering a residence to make an arrest. *United States v. Houle*, 603 F.2d 1297, 1299 (8th Cir. 1979). The officers in this case did not obtain a warrant. Therefore, their entry may be justified only by some valid exception to the warrant requirement.

■ The government contends that the arrest was justified by the "exigent circumstances" or the "hot pursuit" exceptions to the Fourth Amendment. The Magistrate correctly concluded that neither exception applies because the officers did not have probable cause to believe that a suspect was in the Tiessen apartment.

The prosecution also argues that Tiessen consented to the entry. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973), outlined the requirements for assertion of the consent exception:

> [W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances. . . .

The requirement that the prosecution carry the burden to show consent is of long standing. *Bumper v. State of North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968); *United States v. Frazier*, 560 F.2d 884, 889 (8th Cir. 1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978); *United States v. DiGiacomo*, 579 F.2d 1211, 1216 (10th Cir. 1978). After an examination of "the totality of all the circumstances," *United States v. Matthews*, 603 F.2d 48, 52 (8th Cir. 1979), it is clear that the prosecution has not met its burden to show that Tiessen consented to the police entry, even assuming that Tiessen's door was unlatched.

■ Once the police officers crossed Tiessen's threshold, they were impinging upon her constitutionally protected privacy. A door that is not solidly latched does not amount to an invitation to enter.

The circumstances suggest that Tiessen did not explicitly or impliedly ratify the police officer's unilateral decision to enter. Tiessen and one of her daughters were wearing nightclothes (Tr. 113) and Tiessen was reclining on the couch (Tr. 91). Most persons when not fully clothed do not explicitly or impliedly consent to another person's entry.

■ That Tiessen answered one or more of the officers' questions does not constitute consent. The officers were uniformed (Tr. 116), and when two police officers suddenly appear uninvited in one's apartment, one's initial reaction is shock, not an immediate order to leave. To the extent that questions were asked and answered, all of the discussions occurred in a very short period of time,[2] hardly enough to establish consent on Tiessen's part. Further, there has been no showing by the prosecution that Tiessen knew that she had a right to tell the police officers to leave or that she had a right to refuse to answer questions, one factor that *Schneckloth v. Bustamonte*, 412 U.S. 218, 249–50, 93 S.Ct. 2041, 2059–60, 36 L.Ed.2d

---

2. Officer Miske testified that the suspect came out after one question about Renee Sauro. (Tr. 113). Tiessen estimated that "about a minute"

passed between the time the officers first entered and the time they saw Wenzel. (Tr. 93).

854 (1973) identified as useful to determine voluntariness of consent.[3]

Because the entry and arrest were unlawful, the fruits therefrom must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). These include items seized prior to and subsequent to issuance of the warrant, the line-up and photographic spread identifications, and defendant's oral statements.

Accordingly,

IT IS ORDERED that defendant's motion to suppress on the ground that the entry and arrest were unlawful be and hereby is granted.

3. This case is distinguishable from those cases that have found consent to a search. *United States v. Kurck*, 552 F.2d 1320 (8th Cir. 1977), dealt with the search of an automobile trunk. In that case, the Secret Service obtained a key to the trunk from the arrested driver. The fact that the agents asked for the key and obtained it implied consent to the search. *See United States v. Mallory*, 460 F.2d 243, 247 (10th Cir.), *cert. denied*, 409 U.S. 870, 93 S.Ct. 197, 34 L.Ed.2d 120 (1972) (similar automobile key case). In this case, Tiessen took no affirmative action to grant entry to the police officers, and answers to questions did not ratify their uninvited entry. Also, the driver in *Kurck* had been an informant for the government. The Court of Appeals found that this "cooperative relationship" was strong evidence of consent. 552 F.2d at 1321. In this case, of course, Tiessen had no such relationship with the St. Paul police department.