Carl James KRAUSE,
Petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C3–84–809.

Court of Appeals of Minnesota.

Dec. 4, 1984.

---

Daniel J. Moulton, Rochester, for appellant.

Hubert H. Humphrey, III, State Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by FOLEY, P.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

FOLEY, Judge.

Carl James Krause appeals an order of the district court sustaining the revocation of his driver's license pursuant to Minn. Stat. § 169.123 (Supp.1983), the implied consent law. We reverse and remand.

## FACTS

On February 25, 1984 at approximately 12:45 a.m., the police chief of Oronoco stopped to check a municipal liquor store as part of his normal patrol. The bartender and the waitress told the police chief that appellant Carl James Krause had been in the bar and had threatened his own brother earlier that night. The police chief had known Krause for 15 years and believed his unruly behavior was due to consumption of alcohol.

Later that morning, the police chief heard reports that Krause had been involved in two car accidents, one on the Oronoco bridge and one in the parking lot of a local restaurant. After observing Krause driving a green Ford without its lights on, the police chief called for back-up assistance. He then went to Krause's home and returned to the restaurant parking lot when he did not see the green Ford in Krause's driveway.

The two back-up officers were unable to find Krause for about 20 minutes. At about 2:30 a.m. the officers went to Krause's home and found his Ford in the driveway with fresh damage. The officers looked around the house and inspected the Ford. They knocked repeatedly on the door until Krause's 10-year old son Gerald opened it. They asked Gerald if they could see his father. Gerald told the officers that he would go and get his father. Gerald went to his father's bedroom and began to wake him. The officers followed him and invaded Krause's bedroom. A few minutes later, the police chief joined the two officers in the bedroom. Krause was in bed asleep with his wife and younger child. The three officers stood on both sides of the bed and asked Krause to get out of bed. They officially informed him that they were arresting him for reckless driving. When Krause got out of bed he staggered and the officers noticed his eyes were bloodshot and watery, his speech slurry and his breath smelled like alcohol. Based upon those observations, the officers arrested Krause for driving under the in-

fluence and took him to the Olmsted County Jail. Krause was read the implied consent warning. After a conversation with his attorney, he refused to submit to any of the tests.

## ISSUE

Did the trial court err in deciding that exigent circumstances justified police entry into Krause's home without consent or a warrant to arrest him for the misdemeanor offense of reckless driving?

## ANALYSIS

■ "The physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980) (quoting *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972)). A principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purpose of search or arrest. *Welsh v. Wisconsin*, ─── U.S. ───, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984).

■ Arrests in the home without a warrant are per se unreasonable absent exigent circumstances. *See Coolidge v. New Hampshire*, 403 U.S. 443, 474–475, 91 S.Ct. 2022, 2042–2043, 29 L.Ed.2d 564 (1971). The courts have not exclusively defined what "exigent circumstances" might be that would justify arrest in the home without a warrant. However, the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests. Indeed, the Supreme Court has recognized only a few such emergency conditions. *See Welsch*, 104 S.Ct. at 2097–2098 (citing *United States v. Santana*, 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409–2410, 49 L.Ed.2d 300 (1976) (hot pursuit of a fleeing

felon); *Schmerber v. California*, 384 U.S. 757, 770–771, 86 S.Ct. 1826, 1835–1836, 16 L.Ed.2d 908 (1966) (destruction of evidence); *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978) (ongoing fire)). *See also State v. Powell*, 357 N.W.2d 146 (Minn.Ct.App.1984) (police officer's entry of a home was reasonable and within scope of consent where the suspect's mother consented, the officer had good reason to believe the suspect was hiding in another room, and the officer searched only that room).

■ The facts before us indicate a blatant police intrusion into the home for a warrantless misdemeanor arrest. The police barged into Krause's home in the middle of the night when he was asleep with his wife and child. They pulled him out of bed and placed him under arrest. While the trial court made no finding regarding consent, the totality of the evidence shows there was no consent to enter the home. The offense was not a felony. There was no hot pursuit and Krause posed no danger to himself or the public while asleep in bed. Here, the Fourth Amendment fully protects the sanctity of the home and its occupants from unlawful intrusion by police authorities.

■ A warrantless home arrest cannot be upheld simply because evidence of the petitioner's blood-alcohol level might have dissipated while the police obtained a warrant. *Welsch*, 104 S.Ct. at 2100.[1] Unlike the Minnesota statute, the Wisconsin statute in *Welsch* defines driving under the influence as a civil, not a criminal offense. Nonetheless, application of the exigent circumstances exception in the context of a home entry should rarely be sanctioned when only a minor offense has been committed. *See Id.* 104 S.Ct. at 2098.

Here there were no exigent circumstances justifying violation of Fourth Amendment rights. As the United States Supreme Court proclaimed:

**1.** *Welsch* was decided on May 15, 1984, after the date of the trial court's ruling in the case before us.

To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home. This is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is clearly present.

*Payton,* 445 U.S. at 588–89, 100 S.Ct. at 1381–82 (quoting *United States v. Reed,* 572 F.2d 412, 423 (2nd Cir.1978), cert. denied, *sub nom. Goldsmith v. United States,* 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978)).

Neither the Fourth Amendment of the United States Constitution nor article 1, section 10 of the Minnesota Constitution will abide such an intrusion and arrest. This warrantless arrest was unconstitutional and the case must be reversed.

### DECISION

We reverse and remand, with instructions to reinstate Krause's driver's license.