**Linda Lee PESTERFIELD,
Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC
SAFETY, Respondent.**

**No. CX–86–1119.**

Court of Appeals of Minnesota.

Jan. 20, 1987.

---

1. The *Pazderski* court characterized the use of the vehicle as similar to a tent or a summer screen house.

Mark A. McDonough, Apple Valley, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellant Linda Lee Pesterfield's driving privileges were revoked pursuant to the implied consent law. The trial court sustained the revocation and Pesterfield appeals. We affirm.

## FACTS

Janet Carlson observed an Oldsmobile being driven erratically in Apple Valley by an older woman with "salt and pepper" colored hair. At a turn onto another street, the vehicle went out of control and came to rest on top of a snowbank. Carlson had observed the driver with her head tilted back and her arm flung to one side. Carlson concluded the driver was possibly intoxicated and within fifteen minutes Carlson called the Apple Valley Police Department, relaying her observations and opinion and giving the license number of the vehicle. She also gave her name and address to the dispatcher.

Shortly thereafter, Officer Anglin of the Apple Valley Police Department arrived at the scene. After checking the license through the dispatcher, he found that Pesterfield was the owner and that she lived very close to the intersection. Anglin proceeded toward the Pesterfield residence encountering, on the way, Pesterfield's 17-year-old daughter who told him her mother was the driver and that she was now at home. Anglin went to the Pesterfield residence where a second officer joined him.

The officers entered the home with the consent of the daughter, and shortly thereafter received her permission to go upstairs to talk to Pesterfield. Officer Anglin knocked on the bedroom door. Pesterfield first told the officers to "go away," but later opened the door and began to converse with Anglin.

During the conversation the officer observed the odor of alcohol, bloodshot eyes, and slurred speech. He then requested a preliminary breath test, but Pesterfield could not provide an adequate sample. She was placed under arrest for driving a motor vehicle while under the influence.

Pesterfield stipulated that the officer properly read her the implied consent advisory, she understood her rights, and she agreed to take a breath test. She further stipulated she was given a valid Intoxilyzer test with a .24 alcohol concentration.

The court found that the officer had probable cause to believe Pesterfield was driving while under the influence, and that she was involved in an accident. The court found all observations by the police officer of Pesterfield took place within forty-five minutes of the time she was driving her vehicle. The court also found that a portion of the information used by the officer to establish probable cause was properly furnished by Janet Carlson over the telephone to the police dispatcher, and was also lawfully obtained by him from Pesterfield's daughter. The court determined that none of Pesterfield's constitutional rights, including her right to be free from an illegal search or an illegal entry into her residence, was violated by the police.

The trial court sustained the revocation of Pesterfield's driving privileges, and she brought an appeal from the order.

### ISSUES

1. Did the trial court improperly consider facts which the police officer did not possess at the time of the arrest in making the probable cause determination?

2. Was the consent which the police officers obtained to enter appellant's home valid?

3. Did the police officer have probable cause to believe that appellant had been driving while under the influence?

### ANALYSIS

1. Pesterfield argues that the testimony by Carlson that the automobile was being driven erratically, that the driver attempted to negotiate the turn, that Carlson observed the driver with her head tilted back and her arm flung to one side, and that within fifteen minutes thereafter she called the Apple Valley police was irrelevant and should be excluded because this information was not conveyed to the police dispatcher. She also argues that all of Carlson's testimony was irrelevant, and only the officer can testify as to the information he possessed at the time of the arrest.

It is true that probable cause must be evaluated from a police officer's viewpoint at the time of the arrest. *State v. Harris,* 265 Minn. 260, 264, 121 N.W.2d 327, 331, *cert. denied,* 375 U.S. 867, 84 S.Ct. 141, 11 L.Ed.2d 94 (1963). Information possessed by several officers may be considered in the aggregate to determine whether probable cause existed. *See Rancour v. Commissioner of Public Safety,* 355 N.W.2d 462, 464 (Minn.Ct.App. 1984).

At the hearing, Carlson distinguished the facts which she told the dispatcher from her additional observations. She testified that she called the police and asked for the procedure for reporting a drunk driver. She advised the dispatcher that she was on her way to the bank, a woman veered around a truck on Holyoke and Carlson stopped; the woman attempted to make a right-hand turn onto 138th Street Court, missed the turn, and went up into a snowbank. She said that this happened twenty to twenty-five minutes previously, that the woman's car was still there, but that the woman was not. She described the woman to the dispatcher as forty to fifty years old, with salt and pepper grayish hair. She gave the license plate number to the police.

While the trial court could not have properly considered information which the police agency did not possess at the time of the arrest in its probable cause determination, we cannot say it was error for the trial court to allow Carlson to testify as to her observations. In its findings the trial court specifically referred to basing the probable cause determination, in part, on information "properly furnished by Janet Carlson over the telephone to the police dispatcher." In addition, in this type of case, where an officer comes upon an abandoned vehicle, the person arrested often asserts that he or she was not the driver. *See, e.g., Hess v. Commissioner of Public Safety,* 392 N.W.2d 586 (Minn.Ct.App. 1986), *pet. for rev. denied,* (Minn. Oct. 22, 1986). Admissibility of evidence is within the discretion of the trial court. *Weiby v.*

*Wente,* 264 N.W.2d 624, 627 (Minn.1978). The trial court did not abuse its discretion by admitting this testimony.

2. The police officers entered Pesterfield's home and arrested her without a warrant. Pesterfield argues that the police unconstitutionally intruded in her home, and that information obtained as a result of the illegal intrusion should not be considered in a probable cause determination. *See Krause v. Commissioner of Public Safety,* 358 N.W.2d 481 (Minn.Ct.App. 1984).

The fourth amendment "prohibits the police from making a warrantless and *nonconsensual* entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York,* 445 U.S. 573, 576, 100 S.Ct. 1371, 1374, 63 L.Ed.2d 639 (1980) (emphasis added). The entry here was made without a warrant, and its legality is based upon the consent of Pesterfield's daughter and Pesterfield. *See Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 2100 n. 15, 80 L.Ed.2d 732 (1984). The trial court determined that Pesterfield's constitutional rights were not violated.

██ A valid and voluntary consent to enter may be followed by a warrantless in-home arrest. *United States v. Briley,* 726 F.2d 1301, 1303 (8th Cir.1984). A consent is valid if it is given voluntarily and without coercion. *Id.* at 1304. Mere acquiescence on a claim of police authority or submission in the face of force is not sufficient. *State v. Howard,* 373 N.W.2d 596, 599 (Minn.1985). The voluntary nature of a consent is a question of fact to be determined from all the circumstances, *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973), and the government has the burden of showing the consent was given freely. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). While the subject's knowledge of her right to refuse is a factor, establishing such knowledge is not a prerequisite to finding voluntary consent. *State v. Hanley,* 363 N.W.2d 735, 739 (Minn.1985). A third party may give consent as long as that third party had

"common authority" over the premises. *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Common authority has been defined as "mutual use of the property by persons generally having joint access or control for most purposes * * *." *Id.* at 171 n. 7, 94 S.Ct. at 993 n. 7; *State v. Powell,* 357 N.W.2d 146, 148 (Minn.Ct.App. 1984), *pet. for rev. denied,* (Minn. Jan 15, 1985).

██ Pesterfield contends that the trial court's determination that her daughter's consent was voluntary is clearly erroneous. She argues that there was a show of force because there were two uniformed police officers in two separate squad cars who failed to leave after twice encountering reluctance or hesitation. She also argues there was a claim of police authority when the officers told her teenage daughter that they "had to investigate" and they "have to talk about this matter."

The officer first talked to Pesterfield's daughter on the doorstep and explained that they had to investigate the driving of her mother, and that they had received a report that the driver may be intoxicated. The daughter was reluctant to allow him to enter, and, on the advice of her companion, went in and called a next-door neighbor for advice. She returned to the door and was still reluctant. The officers again asked the daughter if she would wake her mother so he could talk to her. She said "I'm not going to go upstairs and wake her up." She said "I don't want to wake her up to talk to you." The officer said "we have to talk about this matter" and she let them in the foyer, saying words to the effect of "come in." She then returned to the telephone and said "it's okay, go up and talk to my mom." The officers did not inform Pesterfield's daughter that she had a right to refuse.

We do not believe, on the facts of this case, that the trial court was clearly erroneous in finding consent. Although reluctant, the daughter did consent to having the officers enter the home, after consulting with her neighbor. The officers did not

misrepresent their purpose in asking to come in, and there was no evidence of any coercion by a threat to obtain a warrant. *See State v. Snyder*, 375 N.W.2d 518, 525 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. Dec. 13, 1985); *Hanley*, 363 N.W.2d at 739; *cf. United States v. Mayes*, 552 F.2d 729 (6th Cir.1977) (impermissibly coercive pressure).

Pesterfield also contends that the trial court was clearly erroneous in determining she consented voluntarily to talk to the officer. However, while Pesterfield initially told the officer to "go away," she then voluntarily opened the door. The trial court was not clearly erroneous in determining that this consent was valid.

3. Pesterfield argues that the information which the officers had was insufficient to establish probable cause. The police department received a call from Carlson, who told them that the accident occurred twenty to twenty-five minutes earlier, described the automobile, identified the license plate number and the correct location. She also described the driver to the police and gave her opinion that the driver was intoxicated.

The officer arrived within minutes, finding the vehicle at the location described. He received information from Pesterfield's daughter that her mother had been driving the car at the time of the accident and was now home. The daughter admitted him into the house and Pesterfield admitted him into the bedroom. The officer noticed indicia of intoxication. Although Pesterfield said she had something to drink after getting home, she refused to give any details. She did admit to the officer that she was intoxicated.

Probable cause exists when all the facts and circumstances warrant a cautious person to believe that the suspect was driving or operating a vehicle while under the influence. It must be evaluated from a point of view of a prudent and cautious police officer on the scene at the time of the arrest. The trial court must consider the totality of the circumstances and re-

member that trained officers may make inferences and deductions which might elude an untrained person. *Johnson v. Commissioner of Public Safety*, 366 N.W.2d 347, 350 (Minn.Ct.App.1985). An officer need not personally observe the driver in the act of driving to request a test to determine the alcohol content of the driver's blood. *State v. Harris*, 295 Minn. 38, 42, 202 N.W.2d 878, 880–81 (1972). The facts and circumstances here were sufficient to support the trial court's conclusion that the officer had probable cause to believe that appellant had been driving while under the influence.

### DECISION

The decision of the trial court sustaining the revocation is affirmed.

Affirmed.