**Christie LaRae PULLEN,
Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC
SAFETY, Respondent.**

No. C7–87–763.

Court of Appeals of Minnesota.

Sept. 29, 1987.

Robert H. Meier, Minneapolis, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by HUSPENI, P.J. and FORSBERG and LESLIE, JJ.

### OPINION

FORSBERG, Judge.

Following her arrest for driving while under the influence, appellant Christie LaRae Pullen's license was revoked because she failed to provide an adequate breath sample. She petitioned for judicial review, and the trial court sustained the revocation. This appeal followed. We reverse.

### FACTS

Police Officer Marie Fierck Przynski was on duty at approximately 9:00 a.m. on June 2, 1986, when she responded to a radio dispatch directing her to the alley at 46th and Cedar to investigate an accident. When she arrived, she was met by the complainants, who told her that their neighbor had driven her car into the wall of their garage, and had then gone into her house. At a revocation hearing before a referee, Przynski initially testified: "I then responded to that address and went in the side door where I talked to Ms. Pullen. * * As I went in, I asked her about the accident and I asked her to produce her driver's license."

Appellant testified that she had tried to put her car into the garage, but it would not start and rolled back into her neighbors' garage. Appellant went into the house, and a few minutes later Przynski was at her back door. She did not ring the door bell or knock; she walked into the kitchen as appellant was standing by her table. Appellant said: "I was a little bit in a state of shock at that point, that she walked in that way, and I was very ill at that time." She testified on cross-examination that she did not feel it would be in her best interest to refuse entrance to Przynski. She did not tell Przynski "come in" or "do not come in."

On rebuttal, Przynski testified:

After I had been directed to [appellant's] house—this was about 9:00 o'clock in the morning—I approached the north side of it. It's a double bungalow type building. The screen door was closed but unlatched and the interior door was open. I looked in, knocked on the door and then opened up the screen door and attempted to step in.

She testified that she could see appellant in the room near the door, but did not know whether appellant could see through the screen. When Przynski opened the door, appellant looked in her direction, but did not protest. Once inside the screen door, a large black dog came up to her. Przynski asked appellant to take care of the dog because she did not want the dog to bite her. Appellant did not say anything, but called the dog and put it in another room and closed the door. Przynski stepped fur-

ther into the room and said: "I'm here about the accident." Przynski testified that appellant did not ask her to leave, object to her being there, or say she did not want her to come in.

On the basis of this testimony, the referee recommended the following finding: "Przynski walked the short distance to that house, knocked at the back door and was allowed entry by the occupant." The trial court denied appellant's motion to amend the findings and sustained the revocation.

## ISSUE

Was the officer's entry into appellant's home consensual?

## ANALYSIS

The fourth amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York*, 445 U.S. 573, 576, 100 S.Ct. 1371, 1375, 63 L.Ed.2d 639 (1980), *quoted in Pesterfield v. Commissioner of Public Safety*, 399 N.W.2d 605, 609 (Minn. Ct.App.1987). The legality of the entry here is based upon the "consent" of the appellant. *See Welsh v. Wisconsin*, 466 U.S. 740, 755 n. 15, 104 S.Ct. 2091, 2100 n. 15, 80 L.Ed.2d 732 (1984).

The issue of consent has been considered on several occasions:

A valid and voluntary consent to enter may be followed by a warrantless in-home arrest. *United States v. Briley*, 726 F.2d 1301, 1303 (8th Cir.1984). A consent is valid if it is given voluntarily and without coercion. *Id.* at 1304. Mere acquiescence on a claim of police authority or submission in the face of force is not sufficient. *State v. Howard*, 373 N.W.2d 596, 599 (Minn.1985). The voluntary nature of a consent is a question of fact to be determined from all the circumstances, *Schneckloth v. Busta-monte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–2048, 36 L.Ed.2d 854 (1973), and the government has the burden of showing the consent was given freely. *Bumper*

*v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). *Pesterfield*, 399 N.W.2d at 609.

In *Pesterfield*, this court affirmed the trial court's finding of consent, where the defendant's teen-age daughter reluctantly allowed the officers to enter the home after consulting with a neighbor. *Id.* at 609–10. In *Sjodin v. Commissioner of Public Safety*, 401 N.W.2d 422 (Minn.Ct.App.1987), this court affirmed a trial court's determination that consent was not given to an entry, where a police officer knocked on the door and was admitted by a cab driver. *Id.* at 424.

In several cases, although consent was not given explicitly, there were nonetheless indications that the officer was invited into the home. In *State v. Howard*, 373 N.W.2d 596 (Minn.1985), the defendant argued that certain evidence was suppressible as fruit of an unlawful, warrantless entry. The defendant knew the officers who had come to his door and had cooperated fully with them in the investigation previously. The court found that in light of his prior contacts with the police and his continuing voluntary cooperation, his act in opening the inner door completely and then stepping back as if to make room could only be interpreted as constituting limited consent to enter. *Id.* at 599. In *State v. Ulm*, 326 N.W.2d 159 (Minn.1982), the trial court found consent where the defendant's wife motioned the sheriff from her porch, indicating an invitation, and led the officers into the house. *Id.* at 162.

In contrast, the officer in this case knocked on the door, opened the door, and stepped in. Appellant did not invite the officer to enter by word or gesture. Even under the officer's version of the events, we do not believe a factual finding of consent can be made. Because we believe that the arrest was in violation of the fourth amendment, facts constituting probable cause which were gained as a result of the warrantless, nonconsensual entry cannot be considered in the implied consent proceeding. *Sjodin*, 401 N.W.2d at 424–25; *Krause v. Commissioner of Public Safety*,

358 N.W.2d 481, 483–84 (Minn.Ct.App. 1984).

## DECISION

The trial court's order sustaining the revocation is reversed and the revocation is rescinded.

Reversed.