STATE of Minnesota, Plaintiff,

v.

Robert A. METZ, Defendant.

No. C1–87–2301.

Court of Appeals of Minnesota.

April 26, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Richard M. Arney, Washington Co. Atty., Fred A. Fink, Jr., Asst. Co. Atty., Stillwater, for plaintiff.

Mark W. Peterson, Peterson & Singer, Minneapolis, for defendant.

Heard, considered and decided by FOLEY, P.J., and NORTON and KALITOWSKI, JJ.

### OPINION

FOLEY, Judge.

The trial court denied defendant Robert A. Metz' motion to suppress evidence inadvertently found in a rented storage locker. The trial court then certified the issue. Although certification in this case is improper, we grant discretionary review and affirm the trial court's order.

### FACTS

On January 27, 1987, an employee of Forest Lake Mini Storage noticed that locks were missing from several storage units. He called the Forest Lake police to report a possible burglary. Officer Cockburn arrived and inspected the units. Locks were missing from units 262, 263, 264, 267, and 271. Of these units, only unit 267 belonged to Metz.

Cockburn noticed fresh footprints in the snow at the entrance to unit 267. He did not report whether the door to unit 267 was open or closed. Cockburn entered unit 267 and noticed snowy footprints leading mid-

way into the unit. Inside unit 267, he noticed three motorcycles, two of which were partly disassembled. Cockburn examined the vehicle identification numbers and found that one number was partly removed as if ground off by a drill. He recorded the other numbers and found that one of the motorcycles was reported stolen on July 27, 1986. He checked with an employee of the storage company and determined that unit 267 was rented by Metz.

Cockburn reported his findings to Officer Hanegraff. Hanegraff went to the scene, entered unit 267, took photographs, and examined the motorcycles and motorcycle parts. He left unit 267 and applied for a search warrant.

A warrant issued but was not executed until the morning of the next day. Hanegraff, together with other officers, searched unit 267 and seized the three motorcycles, various tools, and a front left fender to a blue Olds Cutlass. The officers decided that based on what they found, Metz could have rented other units in which they might find more stolen vehicles and parts. That day they obtained another warrant and later searched units 251 and 310. They found two stolen cars, more motorcycle parts, license plates, and tools. Police impounded all the property found in units 251, 267 and 310.

Metz was arrested and charged with four counts of receiving stolen property, Minn. Stat. § 609.53, subd. 1(1) (1986). He was also charged with one count of possession of electronic incapacitation device by a felon. This charge was eventually dropped.

At the omnibus hearing, Metz moved to suppress among other things the evidence discovered in unit 267. The trial court decided that the evidence discovered in unit 267 was admissible under the exigent circumstance and plain view exceptions to the warrant requirement.

Metz moved to certify the issue concerning the warrantless entry of unit 267. The trial court eventually certified the question pursuant to Minn.R.Crim.P. 28.03. Request by this court to certify the question to the Supreme Court was denied.

### ISSUE

Did the warrantless search of storage unit 267 fall within any of the recognized exceptions to the warrant requirement?

### ANALYSIS

■ Pretrial orders refusing to suppress evidence are not appealable. *State v. Childs*, 269 N.W.2d 25, 26 n. 1 (Minn.1978). Certification is not a substitute for appeal. *Id.* However, a court may grant discretionary review to consider such issues when the case has been briefed, the record is adequately developed, and the evidence in question is critical to the prosecution's case. *Id.* In this case, as in *Childs*, the issue is important, fully briefed, and documented by a well developed record. Therefore, we grant discretionary review.

Warrantless searches are unreasonable per se unless justified by an exception to the warrant requirement. *State v. Buschkopf*, 373 N.W.2d 756, 766 (Minn.1985). Exceptions to the warrant requirement include exigent circumstances and the plain view doctrine. *State v. Lohnes*, 344 N.W.2d 605, 610 (Minn.1984); *State v. Hoven*, 269 N.W.2d 849, 853 (Minn.1978). The state bears the burden of showing that at least one exception applies, or evidence seized without a warrant will be suppressed. *See, e.g., State v. Armstrong*, 292 Minn. 471, 473, 194 N.W.2d 293, 294 (1972); *Krause v. Commissioner of Public Safety*, 358 N.W.2d 481, 483 (Minn.Ct.App. 1984).

■ The plain view exception to the warrant requirement applies only when police a) lawfully enter an area, and b) inadvertently discover items which are c) plainly incriminating. *State v. Smith*, 261 N.W.2d 349, 352 (Minn.1977). We hold that the state has established that circumstances of this case satisfy each of these three requirements.

### Legal Entry

■ Rather than relying on an absolute test for the presence of exigent circumstances, Minnesota courts have adopted a "totality of circumstances" approach.

*Lohnes,* 344 N.W.2d at 611. Facts which constitute exigency arising from the investigation of a burglary which could justify warrantless search of a storage unit have not yet been considered in Minnesota. However, cases in other jurisdictions and leading commentators have condoned warrantless entries to protect property or personal safety when "police reasonably believe that the premises have recently been or are being burglarized." 2 W. LaFave *Search and Seizure* § 6.6(b) (2d ed. 1987). In *United States v. Dart,* 747 F.2d 263 (4th Cir.1984), the court approved police entry into a storage unit:

> Unquestionably Officer Johnson's initial warrantless entry into Unit 69 did not violate the fourth amendment. The warehouse had clearly been burglarized, and Johnson had reason to believe that the perpetrators were still on the premises. Personal safety, therefore, required a cursory look into the burglarized units.

*Id.* at 267 (citation omitted).

Despite the fact that the officer legally entered the unit, the subsequent search became illegal because

> Johnson's own actions demonstrate that if exigent circumstances existed when he first entered the warehouse, they had long since evaporated by the time the [evidence was discovered].

*Id.* at 268.

In this case, Metz agrees that the officer had a duty to investigate the burglary but argues that the circumstances did not justify entry. Metz argues that by merely looking into the unit, the officer could determine that his safety was not threatened and that the burglar had escaped. Metz argues that the officer's entry exceeded his authority because the exigency had, at that point, evaporated.

Even if we agree that the exigency in this case evaporated after Cockburn was satisfied that no one was in unit 267, the exigency still justifies Cockburn's initial presence at the unit and a cursory inspection of the interior. Cockburn's continued presence in the unit is justified by the inadvertent discovery of plainly incriminating evidence.

*Inadvertency*

Despite doubts about the necessity of the inadvertence requirement, Cockburn clearly did not enter unit 267 to look for stolen motorcycles.[1] He responded to a burglary report, and focused on unit 267 only because he found footprints concentrated in that area. The fact that unit 267 had been rented by Metz is a circumstance of pure chance.

*Incrimination*

The nature and circumstances surrounding the possession of property bears on the determination that the property may be stolen. *State v. Hodges,* 287 N.W.2d 413, 416 n. 1 (Minn.1979). In *Hodges,* the court affirmed a conviction for intentionally concealing stolen vehicles in a rented storage space. Hodges rented storage space from Super. After Super discovered that Hodges tendered a bogus check, Super entered the space and found a large number of pickups in various stages of dismantlement. Super called the police, who entered the space and determined that several vehicles were stolen. Later, police obtained and executed a search warrant.

The court held that the search was illegal because Super had no right to consent on Hodges' behalf. However, the court did not exclude the evidence because police obtained enough information from a reliable private source (Super) to give them probable cause to believe Hodges was in the business of receiving stolen property. Because police executed a valid warrant based on untainted information shortly after the initial search, the evidence seized was admissible.

The supreme court cited the following circumstances which established probable cause: observance of a large number of dismantled trucks, payment with a bad check, supposed use of the space for a seafood transport company, and the fact

---

**1.** *See Arizona v. Hicks,* — U.S. —, 107 S.Ct. 1149, 1155, 94 L.Ed.2d 347 (1987) (White, J., concurring) (the inadvertent discovery prong of the plain view exception "has never been accepted by a majority of this court").

that those "in the business of receiving stolen motor vehicles often * * * rent for short periods of time warehouse-type property or garages which they then use in dismantling the vehicles." *Hodges* at 416 n. 1. *See also State v. Smith*, 261 N.W.2d 349, 352 (Minn.1977).

The facts of this case equally illustrate the incriminating nature of the evidence Cockburn inadvertently saw upon legitimate entry of unit 267. Cockburn observed three motorcycles, two of which were partly dismantled. Parts of other vehicles lay scattered around, together with a number of tools. One vehicle identification number had been partly destroyed, which in itself is evidence of a crime. *See* Minn.Stat. § 168.10, subd. 3(6) (1986). From these facts, Cockburn had probable cause to conclude that the items were stolen and subject to seizure.

Metz argues that the vehicle identification numbers were not in plain view, because Cockburn had to bend over and carefully examine the motorcycles in order to ascertain the numbers. However, the mere recording of serial numbers without moving the object does not constitute a seizure under the fourth amendment. *Arizona v. Hicks*, —— U.S. ——, 107 S.Ct. 1149, 1152, 94 L.Ed.2d 347 (1987). Fourth amendment strictures apply only when police handle objects to determine serial numbers. *Id.* Police may not handle objects to determine serial numbers unless there is probable cause to believe they are stolen. *Id.* at ——, 107 S.Ct. at 1153. The *Hicks* court suppressed evidence because police moved stereo equipment to read serial numbers without having probable cause to believe the items were stolen.

In this case, it is undisputed that Cockburn did not move the motorcycles in order to read the vehicle identification numbers. Accordingly, there was no seizure to scrutinize under fourth amendment restrictions. Even if Cockburn did move the items, the circumstances strongly suggested that he had encountered a "chop shop," thus satisfying the probable cause requirement.

## DECISION

The trial court properly denied Metz' motion to suppress the evidence seized in unit 267. Cockburn inadvertently discovered incriminating evidence in an area where he had a right to be. A later warrantless entry by Hanegraff is harmless since a valid warrant was issued and properly executed based on reliable information supplied by Cockburn.

Affirmed.