**STATE of Minnesota, Appellant,**

v.

**Richard William OTHOUDT, Respondent.**

**No. CX–90–2145.**

Court of Appeals of Minnesota.

April 23, 1991.

Review Granted June 19, 1991.

---

Hubert H. Humphrey, III, Atty. Gen., St. Paul, John E. MacGibbon, Sherburne County Atty., Dean E. Emanuel, Asst. County Atty., Elk River, for appellant.

D. Sherwood McKinnis, Parker, Satrom, O'Neil, Lindberg & McKinnis, Cambridge, for respondent.

Considered and decided by HUSPENI, P.J., and RANDALL and DAVIES, JJ.

## OPINION

RANDALL, Judge.

The trial court was not clearly and unequivocally wrong when it found appellant's warrantless in-home arrest invalid because the deputy sheriff lacked consent to proceed into respondent's home and up to his bedroom. We affirm.

## FACTS

The law enforcement officer here, a deputy sheriff, was dispatched to the scene of a one vehicle accident. No one was present when he arrived. He deduced that a pickup truck had crossed a lane of traffic, run off the road and hit a tree. There was damage to the front end of the truck and the windshield. There was also spattered blood inside the cab. There was no evidence of a drinking driver at this point. The record is devoid of such facts as open or closed containers of alcohol or any odor of alcohol inside the pickup. There were no eyewitnesses. The driver, the number of occupants if more than one, and the facts leading up to the accident were unknown.

A short time later, the deputy was contacted by his dispatcher and told that a Mrs. Othoudt had called the sheriff's office. She had reported that she had been driving the pickup, that she was not hurt, and she requested neither medical nor legal assistance. The sheriff's dispatcher, on his own, contacted medical personnel and sent them to the Othoudt address. The dis-

patcher informed the deputy that medical personnel had been sent to the Othoudt residence and the deputy decided to go to the Othoudts' and check further.

When the deputy arrived at the Othoudt residence, the medical personnel were already inside talking to Mrs. Othoudt. They were putting a cervical collar on her. The deputy, completely on his own, walked uninvited into the Othoudt residence. He did not knock, nor did he request permission to enter. Under cross examination, the deputy conceded he was not given permission to enter the Othoudt residence. When he got inside he began to question Mrs. Othoudt. From observing the lack of blood on her and other statements she made, he suspected she was not telling him the whole story, and he continued to question her.

During the interrogation, she admitted her husband had been driving and had somehow gotten home. When she named her husband as the driver, she pointed upstairs. Her pointing out the general location of respondent was not preceded by any question from either the medical personnel or the deputy that would imply permission to go upstairs. She was not asked, for instance, "Where is he so that we may go check his injuries and treat him." She simply pointed. After she pointed, the medical personnel headed up the stairs and the deputy followed them. The record shows no permission was asked of Mrs. Othoudt to go upstairs by either medical personnel or the deputy. The record discloses only her silence. Once upstairs, the deputy found Mr. Othoudt in his bedroom. During the process of questioning him, the deputy formed the opinion that he was under the influence of alcohol and requested a test which respondent refused. Both sides agree that if the arrest and collection of evidence from respondent, including his refusal to test, is upheld, there is enough evidence to proceed to trial; and both sides agree that if the trial court's finding of an illegal arrest is affirmed, the dismissal of the complaint was in order.

## ISSUE

Did a deputy sheriff have consent from respondent's wife to proceed into the home and up to respondent's bedroom where a warrantless arrest was effected?

## ANALYSIS

We note the initial entry of the deputy into appellant's home was not even based on articulable suspicion, much less probable cause, of any criminal offense. Due to the complete absence of witnesses and alcohol-related evidence, the most the investigating deputy could have speculated, relative to his initial observations of a pickup off on the wrong side of the road, is that possibly the driver "might" have been guilty of a petty misdemeanor/misdemeanor such as crossing the center line or careless driving. *See* Minn.Stat. §§ 169.18, subd. 7(a) (1986); 169.13, subd. 2 (1986); 169.89, subd. 1 (1986).

The evidence used in the DWI criminal charge against respondent was evidence seized *after* the deputy went into respondent's bedroom, observed him, and respondent's subsequent refusal to submit to blood alcohol testing.

The trial court, which heard the oral testimony offered by the arresting deputy and the other evidence presented, found a warrantless in-home arrest. The trial court found the entry was unaccompanied by a clear and unambiguous consent, and thus, dismissed the complaint due to defendant's illegal arrest. The trial court was in the best position to assess credibility and give weight to evidence. The court knew Mr. Othoudt had been able to get home. The court knew Mrs. Othoudt, with a first-hand view of her husband's injuries (they were minimal—the medical personnel treated him for cuts on his hand right in his bedroom and left), deliberately called the authorities *not* to request assistance but only to report that she had been driving the truck and that she was not injured. The trial court knew that when the uninvited medical personnel arrived, Mrs. Othoudt did not change her mind about the extent of her husband's injuries and ask the medical personnel, as long as they were there, to go upstairs and see to her husband. The trial court could have reasonably inferred

that had Mrs. Othoudt been faced with a real medical emergency, out of spousal concern, she would have asked the medical personnel who were then inside her home to help her husband. None of this was done.

■ Our review is clearly defined and limited. A pretrial criminal order suppressing evidence warrants reversal on appeal only if the state demonstrates *clearly and unequivocally that the trial court has erred in its judgment* and that, unless reversed, the error will have a critical impact on the outcome of the trial. *State v. Eisenbacher,* 368 N.W.2d 369, 371 (Minn.App.1985) (quoting *State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977) (emphasis added)).

The trial court made four full pages of detailed findings of fact consisting of 18 separate entries. Among those findings were the following:

5. At approximately 8:20 p.m. the Sherburne County dispatch received a call from one Dawn Michell Othoudt, who claimed that she had been the driver of the vehicle when she had run off the road causing her to run into the tree. Mrs. Othoudt stated that she was now at home and that she was *not* in need of any medical treatment.

\* \* \* \* \* \*

8. Deputy Olmanson entered the home as another medical attendant exited. \* \*

9. \* \* \* Mrs. Othoudt stated to Deputy Olmanson that her husband, Mr. Richard William Othoudt, was the driver of the vehicle and pointed upstairs. \* \* \*

10. Immediately after Mrs. Othoudt pointed upstairs, Deputy Olmanson and a medical attendant, with Mrs. Othoudt *following* behind, proceeded upstairs. \* \* \*

\* \* \* \* \* \*

11. Upon entry into the bedroom the medical personnel made a preliminary visual inspection of Mr. Othoudt and determined that he was *not* in need of medical attention.

12. After Deputy Olmanson stepped inside of the bedroom it became increasingly apparent to him that Mr. Richard William Othoudt, the defendant, was under the influence of alcohol. Deputy Olmanson instructed the defendant to get dressed. Deputy Olmanson stated that defendant may have asked him to leave at this juncture. \* \* \*

(Emphasis added). From its findings of fact, the trial court drew the following legal conclusions:

Based upon the foregoing Findings of Fact, IT IS HEREBY ORDERED:

1. Defendant's motion to dismiss the complaint is granted due to the illegal arrest of defendant.

2. Defendant's motion to suppress all inculpatory statements is moot based on defendant's illegal arrest.

The trial court accompanied its order dismissing the complaint with a detailed five-page memorandum of law. In pertinent part, the memorandum sets out the legal issue.

\* \* \* Defendant asserts that the warrantless entry into his home and the subsequent arrest are illegal due to the violation of defendant's constitutional right against intrusions into his privacy. \* \* \* Plaintiff asserts that the arrest was based on a consensual entry into the home of the defendant and all subsequent evidence obtained as a result of a legal arrest is admissible.

We find the trial court properly recognized the fourth amendment's clear prohibition against authorities making warrantless and nonconsensual entries into a suspect's home to make a routine arrest.

It is axiomatic that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972). And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest. *See Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 368–369,

92 L.Ed. 436 (1948). It is not surprising, therefore, that the Court has recognized, as "a 'basic principle of Fourth Amendment law[,]' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, [445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639]. *See Coolidge v. New Hampshire*, 403 U.S. 443, 474–475, 91 S.Ct. 2022, 2042–2043, 29 L.Ed.2d 564 (1971) ("a search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable, unless the police can show * * * the presence of 'exigent circumstances' ").

*Welsh v. Wisconsin*, 466 U.S. 740, 748–49, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984) (footnote omitted).

■ Both parties agree the trial court's order turns on consent. If consent to enter and search was not given, the arrest was illegal. The trial court correctly stated that the voluntary nature of a claimed consent is a *question of fact* to be determined from all the circumstances, and the government has the burden of showing the alleged consent was given freely and without coercion.

■ We find the trial court properly concluded that the lack of an overt objection by Mrs. Othoudt when the uninvited, and in fact specifically disinvited, medical and law enforcement personnel arrived, did not give rise to a clear and unambiguous consent to enter. The trial court's memorandum stated:

In conjunction with this alleged "consensual" entry the State argues that defendant's wife freely answered the questions posed to her by Deputy Olmanson and this demonstrates some sort of acquiescence and consent. The State is mistaken in this assertion. The fact that an individual answers one or more of police officers questions after the officer has entered the home without a warrant is not sufficient to establish consent to the entry where, to the extent that questions were asked and answered, all the discussion occurred over a very short time period and there was no showing that the individual knew or had reason to know that she had a right to tell the officer to leave or that she had a right to refuse to answer questions. *United States v. Wenzel*, 485 F.Supp. 481 (D.Minn.1980).

The state argues the trial court made a finding that the initial entry into the home was lawful, and therefore, only the question of consent to go upstairs into respondent's bedroom is at issue. We disagree with the state's interpretation of the trial court's memorandum. No official sanction by the trial court of the deputy's entry *into* respondent's home was made. The trial court merely noted in passing, while coming to the firm legal conclusion based on its findings of fact that the entry was illegal, that at best Mrs. Othoudt "might" have impliedly consented to the deputy standing *in* the doorway.[1] The trial court did not even make a specific finding that it so found. All the trial court said was:

*It is arguable that defendant's wife may have impliedly consented to Deputy Olmanson's presence in the entryway. However, it is not clear that the Deputy received any further consent or*

1. The Minnesota Supreme Court has acknowledged that an open doorway is a public place for fourth amendment purposes, that there is no expectation of privacy in such a place and that one may not defeat a legitimate arrest by retreating into a private place. *State v. Howard*, 373 N.W.2d 596, 599 (Minn.1985). The court went on to hold that:

Looked at in the light of his prior contacts with the police and his continuing voluntary cooperation with them, [Howard's] act of opening the inner door completely and then stepping back as if to make room for the officers to enter can only be interpreted as constituting limited consent to enter.

*Id.* at 599.
On our facts, respondent was not in the doorway but was upstairs in bed, and to the deputy looking in the door, his whereabouts were completely unknown. Mrs. Othoudt, standing inside her home, did not open the door for the deputy and then step back to make room for him (the pertinent *Howard* facts), and she was not the defendant. For respondent to have been arrested pursuant to the open doorway doctrine, *he* would need to appear in the doorway. *See State v. Patricelli*, 324 N.W.2d 351, 354 (Minn. 1982).

*permission to enter the home* and proceed upstairs to defendant's bedroom. It is at this point, proceeding upstairs, that Deputy Olmanson's entry becomes illegal and nonconsensual.

(Emphasis added). The trial court drew the reasonable inference that Mrs. Othoudt did not give a clear and unambiguous consent for the deputy to enter into the home and proceed further upstairs into respondent's bedroom.

The state improperly uses *Carlin v. Comm'r of Public Safety*, 413 N.W.2d 249 (Minn.App.1987) to buttress its argument of implied consent to the deputy's initial entry. *Carlin* is inapposite. In *Carlin*, consent was found to exist because:

> the mother was aware the officer was coming to the house to talk with appellant, she went downstairs and opened the door when the officer knocked, she went back upstairs leaving the door open, and no one ever told the officer she could not enter the home, or asked her to leave.

*Id.*, 413 N.W.2d at 251. The state's position is that this case is similar because Mrs. Othoudt had called the police, let the ambulance crew into the house, and made no objection to the officer's entry.

Taking the facts found in *Carlin* one by one, we find: (1) the mother was aware the officer was coming to the house to talk with the suspect. We have exactly the opposite situation. Mrs. Othoudt was not aware the deputy was coming to the house to talk with respondent. (2) In *Carlin*, the officer knocked. We have the opposite fact situation as the deputy admitted that he did not knock and conceded he entered without permission. (3) In *Carlin*, the mother opened the door when the officer knocked. We have exactly the opposite situation as the officer neither knocked nor did Mrs. Othoudt open the door. The officer went in on his own. The only similarity is that in neither case was the officer, who made the uninvited entry, asked to affirmatively leave, but as discussed above, that fact alone does not save a bad warrantless in-home entry.

The implication of the state's argument using *Carlin* is that somehow Mrs. Oth-

oudt's calling the police lends itself to a package of facts to manufacture implied consent where no express consent was given. What we know from the undisputed facts is that Mrs. Othoudt, when calling the police, *specifically denied being hurt and specifically did not want any assistance.*

In *Carlin*, the contents of the phone call between the police and the suspect's parents are not set out in detail. Thus, we cannot assume either Mr. or Mrs. Carlin specifically told the officer over the phone not to come to the house as nobody needed assistance. What the *Carlin* facts do imply is that the Carlins *were told* by the authorities that they were coming to the Carlin home, and the Carlins had no objection. In *Carlin*, the officer came to the house and knocked on the door. The suspect's mother came to the door, opened it, stepped back, left the door open and the officer entered. The trial court in *Carlin* found that sequence of acts, which consisted of an officer knocking on the door, having the door opened by one of the two owners, and then that person stepping back and leaving the door open, was enough to create a reasonable inference of consent to enter. In *Carlin*, our court affirmed the reasonable inference of implied consent found by the trial court. We do not disagree with the trial court's reasonable inference in *Carlin*. Since *Carlin's* pertinent facts are not present here, we suggest *Carlin* supports our decision. *Carlin* is instructive as it refers to *Pullen v. Comm'r of Public Safety*, 412 N.W.2d 780 (Minn.App.1987) (entry nonconsensual where officer knocked on door, opened door, and entered home). *Carlin*, 413 N.W.2d at 251.

In examining *Pullen*, where this court found a nonconsensual illegal entry, the facts are far similar to the present case than are *Carlin's*. In *Pullen*, the uninvited officer knocked on the door, and hearing no response, opened it up herself and let herself in. This court found that since the appellant in *Pullen* (the equivalent of Mrs. Othoudt here) did not invite the officer to enter by word or gesture, even under the officer's version of the events, a factual

finding of consent could not be made. *Pullen*, 412 N.W.2d at 782.

■ Further, the state contends that once inside the house there was consent to proceed within the house to determine respondent's condition. We disagree. The only acts of Mrs. Othoudt inside the house were "non-acts." She simply failed to make a direct statement to the deputy to leave. As the trial court correctly noted from *Wenzel*, the government cannot make a warrantless uninvited entry into someone's home and then shift the burden to the defendant to make an overt statement to get out or risk having the warrantless uninvited entry made legal by default. The burden of proof to justify consent as an exception to the prohibition against warrantless in-home arrests is at all times on the state. *See Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980).

The recent U.S. Supreme Court case of *Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), is instructive and gives guidance for pertinent reasons. The case involves our neighboring state of Wisconsin with implied consent laws, license revocation laws, and DUI laws somewhat parallel to our own. Like this case, *Welsh* involved police coming to an abandoned car on a roadway. Like this case, *Welsh* did not involve the "hot pursuit" exception to the normal warrant requirements prior to making a valid in-home arrest.

The *Welsh* opinion is replete with strong statements which set the scene for the U.S. Supreme Court's decision to accept certiorari and hear a state court appeal from the minor offense of a civil refusal to submit to chemical testing in a DUI setting. The Supreme Court noted, "[b]ecause of the important Fourth Amendment implications of the decision below, we granted certiorari." *Welsh*, 466 U.S. at 748, 104 S.Ct. at 2096. The *Welsh* court states:

Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. * * *

When government's interest is only to arrest for a minor offense, that presumption of unreasonableness of a warrantless intrusion is difficult to rebut, and the government usually should be allowed to make such arrest only with a warrant issued upon probable cause by a neutral and detached magistrate.

*  *  *  *  *  *

[Application of exigent-circumstances exception] [i]n the context of a home entry, should rarely be sanctioned when there is probable cause to believe that only a minor offense * * * has been committed.

*  *  *  *  *  *

[Where a suspect] had already arrived home, and had abandoned his car at the scene of the accident, there was little remaining threat to public safety [so as to justify a warrantless entry].

*Id.* 466 U.S. at 750–53, 104 S.Ct. at 1098–99.

In *Welsh*, the Supreme Court held the state's claim of "exigent circumstances" to be nonpersuasive. In our case, we find the state also fails to establish exigent circumstances. The state argues the rendering of purported medical assistance to respondent somehow makes "consent" out of whole cloth.

A careful reading of *Welsh* discloses that, absent probable cause and exigent circumstances, warrantless in-home arrests have been narrowly limited to the "hot pursuit" doctrine. *Id.* 466 U.S. at 750, 104 S.Ct. at 2098.

After examining the principles set forth in *Payton v. New York* and its progeny, Justice Brennan stated:

Consistently with these long-recognized principles, the Court decided in *Payton v. New York*, * * * that warrantless felony arrests in the home are prohibited by the Fourth Amendment, absent probable cause and exigent circumstances. *Id.* 445 U.S., at 583–590, 100 S.Ct., at 1378–1382. At the same time, the Court declined to consider the scope of any exception for exigent circum-

stances that might justify warrantless home arrests, *id.*, [455 U.S.] at 583, 100 S.Ct., at 1378, thereby leaving to the lower courts the initial application of the exigent-circumstances exception. Prior decisions of this Court, however, have emphasized that exceptions to the warrant requirement are "few in number and carefully delineated," *United States v. United States District Court,* * * * [407 U.S. 297, 318, 92 S.Ct. 2125, 2137, 32 L.Ed.2d 752 (1972)], and that the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests. Indeed, the Court has recognized only a few such emergency conditions, *see, e.g., United States v. Santana,* 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409–2410, 49 L.Ed.2d 300 (1976) (hot pursuit of a fleeing felon); *Warden v. Hayden,* 387 U.S. 294, 298–299, 87 S.Ct. 1642, 1645–1646, 18 L.Ed.2d 782 (1967) (same); *Schmerber v. California,* 384 U.S. 757, 770–771, 86 S.Ct. 1826, 1835–1836, 16 L.Ed.2d 908 (1966) (destruction of evidence); *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978) (ongoing fire), and has actually applied only the "hot pursuit" doctrine to arrests in the home, *see Santana, supra.*

*Our hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor.*

*Welsh,* 466 U.S. at 749–50, 104 S.Ct. at 2097–98 (emphasis added) (footnote omitted). *Welsh* further states:

When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.

This is not a novel idea. Writing in concurrence in *McDonald v. United States,* 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948), Justice Jackson explained why a finding of exigent circum-

stances to justify a warrantless home entry should be severely restricted when only a minor offense has been committed[.]

*Id.* 466 U.S. at 750, 104 S.Ct. at 2098 (footnote omitted).

The *Welsh* holding, its lengthy cites and footnotes, speak to the Supreme Court's philosophy of carefully protecting the sanctity of a private citizen's home, particularly on less than a felony matter. That sanctity is inviolate unless sharply delineated and carefully drawn exceptions are proven by the government.

The state argues that somehow an officer's claim that he wanted to help other medical personnel already at the scene look for an unknown injured party is sufficient "exigent circumstances" to "imply" consent to enter even though lack of express consent was conceded by the officer. The letter and the spirit of *Welsh* and *Wenzel* cut squarely against this reasoning.

*Welsh* is particularly persuasive because, in weighing the gravity of warrantless in-home arrests versus the government's right to investigate, it discusses cases where, absent exigent circumstances, in-home warrantless arrests on routine felonies are forbidden. Here we do not even have a felony. When the offense at issue is a traffic case, as in our case and in *Welsh,* a plain reading of *Welsh* shows the burden on the state to show genuine exigent circumstances or clear and unequivocal consent is, in effect, racheted up even higher than the high burden on a felony arrest. *See Welsh,* 466 U.S. at 749–50, 104 S.Ct. at 2097–98.

The first and most important line of control on a warrantless in-home search, seizure, and arrest issue is the reasoned judgment of a trial court hearing the evidence, viewing the witnesses, weighing inferences, and determining whether enough relevant and admissible evidence has been lawfully seized to allow the case to proceed. We find the trial court fairly weighed the evidence, and correctly applied the law.

The present fact situation is not unique. Abandoned vehicles partially or completely

off a roadside are common. Law enforcement officers coming upon one can usually quickly ascertain the owner through the license plate, and in many cases, the owner will have been the driver. Every abandoned car can lead police straight to a citizen's home. Further, even without the presence of blood, an abandoned car with damage, as we have here, can always raise the "possibility" of someone in the vehicle being injured. If this is all that is needed for a *self-directed and uninvited* invasion of in-home privacy without the constitutional requirement of probable cause for an arrest or a search warrant, we shear off and bury much of the fourth amendment.

This case does not present the factual setting, nor is the fourth amendment[2] the principle to carve out an ad hoc extension to our appellate scope of review when the government appeals a trial court's pre-trial ruling in a criminal case. Before a trial court can be reversed on a state's pretrial appeal, the trial court has to be found clearly and unequivocally in error. Based on the record before us we make no such ruling.

## DECISION

The trial court properly found no consent existed for the arresting officer to enter into respondent's home and proceed upstairs to respondent's bedroom and effect a warrantless arrest.

Affirmed.

2. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const. amend. IV.