**STATE of Minnesota, Appellant,**

v.

**Richard William OTHOUDT, Respondent.**

No. CX–90–2145.

Supreme Court of Minnesota.

March 13, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Thomas D. Hayes, Sherburne County Atty., Dean E. Emanuel, Asst. County Atty., Elk River, for appellant.

D. Sherwood McKinnis, Parker, Satrom, O'Neil, Lindberg & McKinnis, Cambridge, for respondent.

## OPINION

GARDEBRING, Justice.

This case arises from the arrest of Richard Othoudt, in his home, for driving while under the influence of alcohol on January 30, 1990. Othoudt was charged with driving under the influence of alcohol within five years of a prior impaired driving conviction, in violation of Minn.Stat. § 169.121, subd. 1(a) and 3(b); refusal to submit to testing, in violation of Minn.Stat. § 169.-121, subd. 1(a) and 3(c); and failure to notify police of a personal injury accident, in violation of Minn.Stat. § 169.09, subd. 6 and 14(c). After a contested omnibus hearing, pursuant to Minn.R.Crim.P. 11, the trial court found that the state's warrant-

less entry and search of the Othoudt home, culminating in the arrest of respondent, was in violation of the fourth amendment of the United States Constitution and article I of the Minnesota Constitution. The court suppressed all evidence of intoxication obtained pursuant to the illegal arrest. The court found no probable cause to support the charges without the illegally obtained evidence, and dismissed the complaint. The court of appeals affirmed in *State v. Othoudt*, 469 N.W.2d 321 (Minn. App.1991).

At approximately 8:00 p.m. on January 30, 1990, Sherburne County Deputy Sheriff Steven Olmanson was dispatched to investigate a traffic accident. When he arrived at the scene of the accident, he found that a pickup truck had struck a tree. Although the truck's windshield was broken and there was blood on the interior of the vehicle, the driver was not present. While Deputy Olmanson and other officers were investigating the scene, hoping to locate the driver, the sheriff's office dispatcher notified Deputy Olmanson that Dawn Othoudt, respondent's wife, had called to report the accident, and had said she was the driver of the vehicle and was not injured. Because of the blood in the vehicle, the dispatcher directed Deputy Olmanson and an ambulance to go to the Othoudt residence.

The ambulance personnel arrived at the Othoudt residence first and began attending to Dawn Othoudt in the entryway of the house. When Deputy Olmanson arrived he walked up to the house and entered it as an ambulance attendant was exiting. He did not knock or ask permission to enter, prior to entering the home, although he could see Dawn Othoudt in the entryway. Dawn Othoudt did not give him permission to enter. After entering the house Deputy Olmanson began questioning Dawn Othoudt about the accident and her injuries.

During the questioning Dawn Othoudt admitted that she had not been the driver of the car and said that her husband had been driving. She also said that he had been drinking all day and was drunk. As she said this she pointed upstairs. Deputy Olmanson and the ambulance attendant, followed by Dawn Othoudt, went upstairs and into respondent's bedroom, where he was in bed. After asking respondent whether he was injured, Deputy Olmanson asked him to get out of bed and get dressed, and continued questioning him about the accident. As they talked Deputy Olmanson observed that respondent's breath smelled of alcohol, his eyes were bloodshot and slightly glassy, his speech was slurred and he was a little uncoordinated. Deputy Olmanson escorted respondent downstairs, arrested him, placed him in handcuffs and took him to the sheriff's office.

■ Normally, this court will only reverse a pre-trial decision of the trial court suppressing evidence if the State demonstrates "clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial." *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977). However, when reviewing a pre-trial order suppressing evidence where the facts are not in dispute and the trial court's decision is a question of law, the reviewing court may independently review the facts and determine, as a matter of law, whether the evidence need be suppressed. *See State v. Storvick*, 428 N.W.2d 55, 58 n. 1 (Minn.1988) (citing *Berge v. Commissioner of Public Safety*, 374 N.W.2d 730, 732 (Minn.1985)).

■ The fourth amendment to the United States Constitution, and article I of the Minnesota Constitution, proscribe unreasonable searches and seizures by the government of "persons, houses, papers and effects." U.S. Const. amend. IV; Minn. Const. art. I, § 10.[1] Under the

---

1. The full text of these constitutional provisions is as follows:

   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Fourth amendment, searches conducted outside the judicial process are *per se* unreasonable, subject to a few exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). Courts are particularly reluctant to find exceptions to this rule in the context of a warrantless search or seizure in a home. *See Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980); *Storvick*, 428 N.W.2d at 61. To justify a warrantless entry and search of a person's home to make a felony arrest the state must show either consent or probable cause and exigent circumstances. *See Payton*, 445 U.S. at 576, 590, 100 S.Ct. at 1374–75, 1382. If such an entry is made without consent or probable cause and exigent circumstances, its fruit must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963); *see also New York v. Harris*, 495 U.S. 14, 17–19, 110 S.Ct. 1640, 1643, 109 L.Ed.2d 13 (1990).

■■■ The police, investigating an accident or a crime, may enter and search a suspect's home, without a warrant, if they receive consent to do so. *See Payton*, 445 U.S. at 576, 100 S.Ct. at 1374–75. A valid and voluntary consent to enter may be followed by an in-home arrest. *United States v. Briley*, 726 F.2d 1301, 1305 n. 2 (8th Cir.1984). The question of whether consent is voluntary is a question of fact, and is based on all relevant circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973); *State v. Howard*, 373 N.W.2d 596, 599 (Minn.1985). The government has the burden of showing that consent was given freely. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968). Consent does not have to be verbal, but may be implied from conduct. *See Howard*, 373 N.W.2d at 599; *State v. Patricelli*, 324 N.W.2d 351, 353 (Minn.1982).

■■■ There is no question that Dawn Othoudt had the authority to consent to the entry of the Othoudt home. *See State v. Ulm*, 326 N.W.2d 159 (Minn.1982). However, she did not give her consent verbally. The question then becomes whether her actions, or lack of action, and all the relevant circumstances in this case constitute implied consent. The state argues that this case is like *Howard* where this court held that when a murder suspect, who had previously cooperated with the police in the investigation, and had even given them a key to search his home in his absence, opened his door when the police knocked and stepped back, he consented to the police entry of his house. *Howard*, 373 N.W.2d at 599. The state argues that by calling the sheriff's office to report the accident Dawn Othoudt had prior contact with the police and actually "invited" contact with the police. The state also argues that her apparent consent to the ambulance crew's entry means she impliedly consented to the deputy's entry as well.

The *Howard* case is easily distinguished from the facts here. The only prior contact Dawn Othoudt had with the sheriff's office was her telephone call to report the accident. She did not have the extensive contact with the police that the murder suspect in *Howard* had, nor had she previously provided police officers a key, as had *Howard*. Furthermore, the police in *Howard* knocked at the door before they entered and Howard opened it and stepped back, thus manifesting consent by his welcoming behavior. Deputy Olmanson did not knock or in any way seek permission to enter, although he had the opportunity to do so since he testified he could see Dawn Othoudt sitting in the entryway as he approached the door, and Dawn Othoudt in no way indicated, by her conduct, a consent to enter.

■■■ The state also argues that the fact that Dawn Othoudt answered Deputy Olmanson's questions after he entered the

---

U.S. Const., amend. IV.
The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but

upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized.

Minn. Const. art. I, § 10.

house indicates she consented to his entry. When an uninvited police officer enters a home without a warrant and begins asking questions, answering those questions does not indicate an individual consented to the entry. *United States v. Wenzel*, 485 F.Supp. 481, 483 (D.Minn.1980). The fact that Dawn Othoudt answered the questions of the armed and uniformed deputy sheriff who appeared in her home uninvited and unannounced is not sufficient evidence that she consented to his entry.

The critical fact which distinguishes this case from *Howard* and the other similar cases we have decided is the deputy sheriff's failure to seek and obtain some manifestation of consent, either verbally or by welcoming actions. *Compare Howard*, 373 N.W.2d at 599; *Ulm*, 326 N.W.2d at 162; *State v. Hyleck*, 286 Minn. 126, 133, 175 N.W.2d 163, 168–69 (1970), *cert. denied*, 399 U.S. 932, 90 S.Ct. 2267, 26 L.Ed.2d 803 (1970); *State v. Thompson*, 273 Minn. 1, 22, 139 N.W.2d 490, 506 (1966), *cert. denied*, 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966). We have never found that a law enforcement officer had consent to enter a dwelling without evidence of some indication, by someone, that the officer was invited inside. Nor will that change today.

■ The state argues that if Deputy Olmanson's entry was not justified by consent, it was justified by an emergency. The police may enter a dwelling without a warrant if they reasonably believe that a person within is in need of emergency aid. *Mincey v. Arizona*, 437 U.S. 385, 392–93, 98 S.Ct. 2408, 2413–14, 57 L.Ed.2d 290 (1978); *State v. Terrell*, 283 N.W.2d 529, 532 (Minn.1979). In applying the emergency exception the reviewing court should follow two principles: first, that the burden of proof is on the state to show that the circumstances meet the emergency exception, and second, that an objective standard should be applied to determine the reasonableness of the officer's belief that there was an emergency. *Root v. Gauper*, 438 F.2d 361, 364 (8th Cir.1971).

■ To determine whether the officer's actions meet an objective standard of rea-

sonableness the court should ask whether with the facts available to the officer at the moment of the seizure or search, would a person of reasonable caution believe that the action taken was appropriate. *Root*, 438 F.2d at 364–65 (citing *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880–81, 20 L.Ed.2d 889 (1968)).

■ When Deputy Olmanson approached the Othoudt home he knew that there was blood at the scene of the accident, that the driver and perhaps passengers had left the scene, that Dawn Othoudt had called the sheriff's office to report the accident and said she was not injured, and that the ambulance personnel were already at the scene and attending to Dawn Othoudt. We do not believe a person of reasonable caution, particularly a law enforcement officer, would enter a person's home uninvited after that person had told authorities that she was not injured, and the officer could see that even if she was injured she was already being helped. A warrantless entry of a dwelling will not be justified under the emergency doctrine where a law enforcement officer has been specifically told that help was not needed, and can see that medical aid is already being provided.

■ In addition to consent and emergency, there is a third set of circumstances which might justify a warrantless entry of a dwelling. The police may enter a dwelling, without a warrant, to make a felony arrest if they have probable cause and exigent circumstances. *Payton*, 445 U.S. at 576, 100 S.Ct. at 1374–75; *Storvick*, 428 N.W.2d at 61. The state has not made the traditional exigent circumstances argument here, admitting that when Deputy Olmanson arrived at the Othoudt home he had no reason to believe a crime had been committed. Even if the circumstances of the accident scene had given Deputy Olmanson probable cause to arrest respondent for the offenses he was later charged with, those offenses are misdemeanors. Neither this court nor the United States Supreme Court has ever held that exigent circumstances would permit a warrantless entry into a home to arrest for an offense

of lesser magnitude than a felony. *See Welsh v. Wisconsin,* 466 U.S. 740, 752–54, 104 S.Ct. 2091, 2099–2100, 80 L.Ed.2d 732 (1984); *Storvick,* 428 N.W.2d at 61.

Because we have found that Deputy Olmanson's initial warrantless entry into the Othoudt home was not justified by consent, emergency, or probable cause and exigent circumstances, we need not determine whether Deputy Olmanson's continued search of the Othoudt home, after his entry, was legitimate.

Finally, law enforcement personnel and prosecutors are cautioned that this court will not look kindly upon warrantless entries of family residences, justified on the flimsiest and most pretextual of excuses. The constitutional right to be free from unjustified, official invasions of one's home is basic, and this court will not tolerate its violation.

Respondent is entitled to reasonable attorney's fees of $600.00 and costs pursuant to Minn. R. Crim. P. 29.04, subd. 10(3).

Affirmed.