**James T. NEGAARD, Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C9-92-2223.

Court of Appeals of Minnesota.

May 18, 1993.

Robert J. Walter, Dorraine A. Mund, Hall, Byers, Hanson, Steil & Weinberger, P.A., St. Cloud, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Jeffrey S. Bilcik, Spec. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by PARKER, P.J., and FORSBERG, and FOLEY *, JJ.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn.

## OPINION

FORSBERG, Judge.

James Negaard was arrested and charged with driving while intoxicated following a one-vehicle accident outside a bar in Benton County, Minnesota. He twice failed to blow a sufficient Intoxilyzer test, and his driver's license was accordingly revoked under Minn.Stat. § 169.123, subd. 4 (1990), the implied consent law. Negaard petitioned for judicial review of the revocation and, after a hearing, the district court ordered the revocation be sustained. Negaard appeals from entry of the order. We reverse.

## FACTS

On May 14, 1992, a Benton County Deputy Sheriff observed a motor home pull into a service station, stop, and turn its lights off. Soon thereafter the deputy received a call from the Hitchin Post Night Club, stating that a motor home had backed into a metal post in the parking lot causing damage. The motor home then left without reporting the accident. The deputy returned to the service station and inspected the motor home. Based on his observation of the motor home, he determined that this was the motor home involved in the accident.

The deputy then knocked on the door. Negaard appeared at the door, talked briefly to the officer while he was at the doorway, and then turned around and went back into the trailer to dress. The deputy followed Negaard in, and observed signs of intoxication. The deputy testified he didn't recall whether Negaard gave him permission to enter the trailer. Negaard said he did not. Negaard had never met the deputy before that evening.

## ISSUE

Was the warrantless entry into Negaard's motor home to arrest him based on consent and/or hot pursuit?

Const. art. VI, § 10.

**150**

## ANALYSIS

1. The Fourth Amendment to the United States Constitution, and Article I of the Minnesota Constitution, proscribe unreasonable searches and seizures by the government of "persons, houses, papers and effects." U.S. Const. amend. IV; Minn. Const. art. I, § 10. Under the Fourth Amendment, searches conducted outside the judicial process are per se unreasonable, subject to a few exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). Courts are particularly reluctant to find exceptions to this rule in the context of a warrantless search or seizure in a home. *See Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980); *State v. Storvick*, 428 N.W.2d 55, 61 (Minn.1988).

■ There is no evidence that the deputy was in "hot pursuit" of Negaard. He had not fled from the deputy. Moreover, warrantless entry of a dwelling cannot be justified under the emergency doctrine when the purpose of entry is to arrest a defendant for an offense less than a felony. *See State v. Othoudt*, 482 N.W.2d 218, 223–24 (Minn.1992).

■ 2. The Commissioner also argued that the deputy entered Negaard's motor home by consent. Under *Othoudt*, 482 N.W.2d 218, the only permissible basis upon which the police would be permitted to make a warrantless entry to arrest a person for the commission of a misdemeanor would be either consent, or that the person within the home is in need of emergency aid.[1]

■ There clearly is no evidence of explicit consent. The deputy testified that he did not recall whether Negaard invited him into the motor home, and Negaard denied that he granted the deputy permission to enter. Nor is there evidence that the deputy had tacit consent. In *State v. Howard*, 373 N.W.2d 596 (Minn.1985), the court found consent where the police knocked on the door before they entered, the suspect opened the door and stepped back manifesting consent by his welcoming behavior. In addition,

> [the suspect] knew the officers and had cooperated fully with them during their investigation, so fully that on August 13 [the suspect] gave them a key to the house so that they could gain access to search it if no one was home. Looked at in the light of his prior contacts with the police and his continuing voluntary cooperation with them, [the suspect's] act of opening the inner door completely and then stepping back as if to make room for the officers to enter can only be interpreted as constituting limited consent to enter.

*Id.* at 599. In this case, there was no evidence of prior contacts between Negaard and the deputy, or of other "welcoming" behavior as was present in *Howard*.

## DECISION

The order sustaining the revocation of Negaard's driving privileges is reversed.

**Reversed.**

---

1. Although this was an administrative hearing and not a criminal case, case law, curiously, seems to blur the distinction and the exclusionary rule seems to apply.