STATE of Minnesota, Appellant,

v.

David Gustave HAWKINSON, Respondent.

Nos. A11–1565, A11–1819.

Court of Appeals of Minnesota.

March 26, 2012.

Review Granted May 30, 2012.

Lori Swanson, Attorney General, St. Paul, MN; and Alina Schwartz, Joel Jamnik, Assistant Plymouth City Attorneys, Eagan, MN, for appellant.

Peter J. Timmons, Minneapolis, MN, for respondent.

Considered and decided by WORKE, Presiding Judge; CONNOLLY, Judge; and RANDALL, Judge.*

## OPINION

CONNOLLY, Judge.

Respondent moved to suppress or exclude the evidence obtained from a test of his blood sample on the ground that his due-process rights had been violated by the state's failure to preserve the blood sample after respondent had served and filed a written demand for its preservation. The district court granted the motion from the bench and asked the respondent and the state to submit proposed orders. The state challenged both the oral and written decisions, and this court issued an order consolidating those appeals. We affirm.

## FACTS

In March 2010, respondent David Hawkinson was stopped while driving, arrest-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

ed, and taken to the police department of the City of Plymouth. He consented to a blood test and provided a blood sample, which was sent to the Bureau of Criminal Apprehension (BCA). In April 2010, the BCA sent the police department a toxicology report stating that the alcohol concentration of respondent's sample was .11. The report notified the police department that the sample would be destroyed after 12 months unless its return was requested. The police department did not request the return of the blood sample. Appellant State of Minnesota charged respondent with four violations, among them a violation of Minn.Stat. § 169A.20, subd. 1(5) (2008), driving with an alcohol concentration greater than .08.

In June 2010, respondent's counsel served and filed a timely demand for the preservation of "all evidence that may have been obtained by and about Defendant herein including, but not limited to the following items: police squad car video tapes, Implied Consent Advisory video and/or audio tapes, jail or law enforcement centers' security tapes, *blood tests*, urine tests, photographs...." (Emphasis added.) In August 2011, shortly before his trial, respondent called the BCA to ask about his blood sample and learned that it had been destroyed.

Respondent then served and filed a motion to suppress or exclude the evidence obtained from his blood sample. The district court granted that motion.

## ISSUE

Did the state's destruction of respondent's blood sample after respondent had served and filed a demand for its preserva-

tion violate respondent's due-process rights? [1]

## ANALYSIS

■ When the state appeals a pretrial ruling, it must establish clearly and unequivocally that the ruling has a critical impact on the state's case and that the district court erred. *State v. Scott*, 584 N.W.2d 412, 416 (Minn.1998). "[T]he critical impact of the suppression must be first determined before deciding whether the suppression order was made in error." *Id.* The critical impact of the suppression here is not disputed. "[W]hen reviewing a pretrial order suppressing evidence where the facts are not in dispute and the [district] court's decision is a question of law, the reviewing court may independently review the facts and determine, as a matter of law, whether the evidence need be suppressed." *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992).

■ "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97. Appellant argues that the phrase "irrespective of the good faith or bad faith of the prosecution" applies only to the suppression of "evidence favorable to an accused" and that, because respondent's blood sample had no apparent exculpatory value, respondent must show that appellant destroyed it in bad faith to establish a due-process violation. But the right to determine whether evidence is "favorable to an accused" does not belong to the state: the state may not determine what

---

1. The district court also determined that the destruction of the blood sample violated respondent's right to confrontation and his right to criminal discovery procedure. Because we affirm the suppression order based on the due-process violation, we do not address these issues.

evidence is definitely, probably, or possibly not favorable and then destroy it after the accused has specifically and in writing requested that it be preserved without violating due process. Moreover, at a defendant's request, a prosecutor must allow access to and disclose "[t]he results or reports of physical or mental examinations ... that relate to the case." Minn. R.Crim. P. 9.01, subd. 1(4)(a).

To argue that respondent must show that the blood sample was destroyed in bad faith, appellant relies on *State v. Jenkins*, 782 N.W.2d 211, 235 (Minn.2010) (requiring courts to consider "whether the destruction [of the evidence] was intentional and whether the exculpatory value of the lost or destroyed evidence was apparent and material") (quotations omitted) and *State v. Heath*, 685 N.W.2d 48, 55–56 (Minn.App.2004) (requiring defendants, when exculpatory value of evidence is not apparent, to "show bad faith on the part of the state to establish a due-process violation"), *review denied* (Minn. Nov. 16, 2004). Both cases are distinguishable.

*Jenkins* involved a defendant's claim that he was denied a fair trial by the state's destruction of material evidence in part because the state cleaned bullets for testing purposes before the defendant's expert could test them. *Jenkins*, 782 N.W.2d at 235. *Jenkins* held that the defendant had not shown bad faith on the part of the medical examiner or the BCA because they "followed their standard practice in the handling of these bullets." *Id.* at 237. Here, there has been no assertion that appellant "followed a standard practice" by failing to comply with respondent's demand for preservation of all evidence, including blood samples. *Jenkins* also held that any error was harmless because of direct links between the defendant and the gun and the victims and the gun. *Id.* Here, because there was no evidence other than the blood sample that respondent had driven with an alcohol concentration exceeding .08, the destruction of the blood sample was not harmless error.

*Heath* concerned police officers who, after inspecting and photographing a scene where methamphetamine had been manufactured, "designated for destruction those items that [were] believed [to be] contaminated." *Heath*, 685 N.W.2d at 54. "Because the officers acted in accordance with state and federal regulations in destroying contaminated evidence, and there is no showing that the officers acted in bad faith, the [district] court properly denied [the] motion to dismiss." *Id.* at 56. Here, the police department was not following any regulation when it failed to comply with respondent's demand that his blood sample be preserved.

Appellant also relies on *California v. Trombetta*, 467 U.S. 479, 491, 104 S.Ct. 2528, 2535, 81 L.Ed.2d 413 (1984) (concluding that "the Due Process Clause of the Fourteenth Amendment does not require that law enforcement agencies preserve breath samples in order to introduce the results of breath-analysis tests at trial"), but *Trombetta* is also distinguishable. As in *Jenkins* and *Heath*, the destruction of the evidence was the result of officers following their standard practice. *See Trombetta*, 467 U.S. at 482–83, 104 S.Ct. at 2530–31; *Jenkins*, 782 N.W.2d at 237; *Heath*, 685 N.W.2d at 56. More significantly, *Trombetta* required that, for the destruction of evidence to violate due process, the "evidence must ... be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. at 2534–35. Because the defendants in *Trombetta* had both alternative means of challenging their Intoxilyzer results, i.e., inspecting the machine's calibration results and cross-examining the test administrator, *id.* at 490, 104 S.Ct. at 2535,

and alternative means of protecting themselves from erroneous testing by submitting to urine tests or blood tests, whose results were automatically preserved, *id.* at 490 n. 11, 104 S.Ct. at 2535 n. 11, the destruction of the defendants' breath samples was held not to violate due process. *Id.* at 490, 104 S.Ct. at 2535. Here, respondent had no alternative means of establishing the accuracy of the BCA report of his alcohol concentration.

*Trombetta, Jenkins,* and *Heath* are further distinguishable in that none of them concerned a defendant's specific written request that the evidence be preserved. *Brady* refers to the suppression of favorable evidence "upon request" because, in that case, defense counsel requested to see, but was not shown, all of a codefendant's extrajudicial statements. 373 U.S. at 85, 87, 83 S.Ct. at 1195–97. Here, as in *Brady,* respondent requested possibly exculpatory evidence and was deprived of it.[2]

Although *Brady* concerned the withholding of evidence later found to be unquestionably "favorable to an accused," it does not support appellant's argument that, unless evidence is unquestionably favorable to a defendant, there is no due-process violation in its destruction.

## DECISION

Because respondent, having demanded the preservation of his blood sample, need not show that the state acted in bad faith when it destroyed the blood sample to establish a due-process violation, the suppression of evidence from the blood sample was not an error of law.

**Affirmed.**

---

2. Although *Brady* does not indicate whether defense counsel's request to be shown the extrajudicial statements was in writing, 373 U.S. at 84, 83 S.Ct. at 1195, we note that it is desirable for any request for the preservation of evidence to be made in writing.