*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2099**

Jeremy Robert Christen, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed July 28, 2014
Reversed
Connolly, Judge**

Stearns County District Court
File No. 73-CV-13-6092

Jeremy Robert Christen, Albany, Minnesota (pro se respondent)

Lori Swanson, Attorney General, Jeffrey S. Bilcik, Rory C. Mattson, Assistant Attorneys General, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Peterson, Judge; and Connolly, Judge.

## UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant Commissioner of Public Safety challenges the district court's order reversing the revocation of respondent's driving privileges, arguing (1) the totality of the

circumstances demonstrates that respondent consented to alcohol-concentration testing; (2) respondent agreed to submit to alcohol-concentration testing as a condition of operating a motor vehicle on Minnesota roads; (3) *Missouri v. McNeely* did not invalidate Minnesota's implied-consent law; (4) no warrant was required to collect respondent's sample because chemical testing under the implied-consent law is reasonable; and (5) application of the exclusionary rule is not appropriate in this case. We reverse.

## FACTS

On July 3, 2013, an officer responded to a report of a possible drunk driver. The driver, respondent Jeremy Robert Christen, was driving erratically and eventually drove into a nearby lake. While speaking with respondent, the officer noticed that he exhibited signs of impairment. The officer led respondent through field sobriety tests, including a preliminary breath test (PBT). The PBT indicated that respondent's alcohol concentration was 0.117.

The officer arrested respondent for driving while impaired. On the way to the Stearns County Jail, the officer read respondent the Minnesota Motor Vehicle Implied Consent Advisory (the implied-consent advisory). Respondent indicated that he had questions concerning the definition of "unreasonable delay".[1] The officer re-read the

---

[1] The following exchange shows respondent's confusion about the definition of an unreasonable delay:

> **Officer**: Okay. If the test is unreasonably delayed or if you refuse to make a decision, you will be considered to have refused the test. Do you understand what I've just explained?
> **Respondent**: Um how much is the uh time is considered a delay?

2

implied-consent advisory when they arrived at the jail. Respondent indicated that he understood what was read to him and that he wished to speak to an attorney. After consulting with an attorney, respondent agreed to take a breath test, which indicated that his alcohol concentration was 0.10. The officer did not obtain a warrant before administering the breath test.

Based on these results, appellant revoked respondent's driving privileges under Minn. Stat. § 169A.60, subd. 10 (2012). On July 15, 2013, respondent filed a petition seeking judicial review of the revocation of his driving privileges. On September 10, the district court filed its order finding that the totality of the circumstances did not demonstrate that the exigent circumstances exception to the warrant requirement applied and that the threat of criminal sanctions coerced respondent's consent. The district court applied the exclusionary rule and reinstated respondent's driving privileges. On November 8, appellant filed its notice of appeal.

## DECISION

Appellant argues that "[r]espondent consented to alcohol concentration testing because the totality of the circumstances demonstrates that [r]espondent's agreement to submit to chemical testing was freely and voluntarily given." We agree. The United

---

**Officer**: Within reason.
**Respondent**: Now that's very gray.
. . . .
**Officer**: Well reasonable could be 5 minutes, could be 20 minutes.

The officer later explained, "A reasonable period of time could be whatever time it takes you to find an attorney or whatever." After receiving this explanation, respondent decided to call an attorney.

3

States and Minnesota Constitutions prohibit the unreasonable search and seizure of "persons, houses, papers, and effects." U.S. Const. amend. IV; Minn. Const. art. I, § 10. Taking samples of an individual's blood, breath, or urine is a search under the Fourth Amendment. *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1412-13 (1989); *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). "[T]he Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable." *Skinner*, 489 U.S. at 619, 109 S. Ct. at 1414. Warrantless searches are per se unreasonable, subject to limited exceptions. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992). The state bears the burden of establishing the existence of an exception to the warrant requirement. *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001).

Voluntary consent is a valid exception to the search-warrant requirement. *Brooks*, 838 N.W.2d at 568. Consent must be given "freely and voluntarily" based on the preponderance of the evidence. *Id.* To determine whether an individual validly consents, we must consider "the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* at 569 (quotation omitted). "[T]he nature of the encounter includes how the police came to suspect [the offender] was driving under the influence, their request that he take the chemical tests, which included whether they read him the implied consent advisory, and whether he had the right to consult with an attorney." *Id.*

The district court concluded that "[respondent's] consent to the warrantless search was not made freely or voluntarily because []he was threatened with criminal sanctions

4

for refusing." But the district court issued its order on September 10, 2013, without the benefit of the Minnesota Supreme Court's October 2013 *Brooks* decision. In *Brooks*, the Minnesota Supreme Court concluded that "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 570. The implied-consent advisory makes it clear that the offender has "a choice of whether to submit to testing," and "the fact that someone submits to the search after being told that he or she can say no to the search supports a finding of voluntariness." *Id.* at 572.

We conclude that based on the totality of the circumstance, respondent voluntarily consented to the breath test. As in *Brooks*, there was probable cause to arrest respondent for driving while intoxicated. The officer arrested respondent based on the fact that he crashed his vehicle into a lake, showed signs of impairment, and his PBT showed that his alcohol concentration was 0.117. The officer read respondent the implied-consent advisory twice and respondent stated that he understood the advisory and that he wished to consult an attorney. After consulting with an attorney, respondent agreed to submit to the breath test. Moreover, there is no evidence in the record to suggest that the officer unduly coerced respondent into taking the breath test. We therefore, conclude that the district court erred by suppressing the results of the breath test. Consequently, we reverse the district court's order reinstating respondent's driving privileges.[2]

**Reversed.**

---

[2] Appellant also makes alternative arguments for reversing the district court's order. Because we conclude that respondent's consent was voluntary, we need not reach these alternative arguments.