*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1983**

Landon Ricky Olesiak, Petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed August 4, 2014
Reversed
Ross, Judge**

Steele County District Court
File No. 74-CV-13-1203

Joel D. Eaton, Eaton & Mitchell Law Office, LLP, Owatonna, Minnesota (for respondent)

Lori Swanson, Attorney General, Adam Kujawa, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Ross, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

Landon Olesiak spoke with a lawyer and agreed to submit to a blood draw after Owatonna police charged him with driving while impaired and read him the implied-consent advisory. The commissioner of public safety revoked Olesiak's driving

privileges, and Olesiak petitioned the district court to reverse that decision. The district court held that Olesiak had been coerced to take the test by the threat of criminal penalties for refusing, and it overturned the commissioner's revocation decision. Because the criminal penalties for test refusal are insufficient to coerce Olesiak's consent to the search and no other evidence of coercion is alleged, we reverse.

## FACTS

Owatonna Police Officer Ben Johnson stopped a car driven by Landon Olesiak late one night in April 2013 after Olesiak drove over the center line. Johnson noticed that Olesiak smelled strongly of alcoholic beverages and had watery eyes. Olesiak failed all field sobriety tests and refused to submit to a preliminary breath test. Johnson arrested Olesiak for driving while impaired and placed him in the squad car. Johnson began reading Olesiak the implied-consent advisory. Olesiak indicated that he understood the advisory and said that he wanted to contact an attorney. Officer Johnson took Olesiak to a hospital. Olesiak spoke to an attorney and then agreed to submit to a blood test. Hospital staff drew a blood sample that indicated a .16 alcohol concentration. The state charged Olesiak with driving while impaired, and the commissioner revoked his driving privileges.

Olesiak petitioned the district court to rescind the revocation, arguing that the blood test violated his constitutional right to be free from unreasonable searches and seizures. He contended that the criminal test-refusal penalties coerced his consent, and, based only on that coercion theory, the district court agreed with Olesiak and rescinded his revocation.

The commissioner appeals.

## D E C I S I O N

The commissioner argues that the district court erred when it suppressed the result of Olesiak's blood test and rescinded the revocation of his driving privileges. The facts are undisputed, so we review de novo the district court's suppression order. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn. 1992).

The federal and state constitutions protect citizens from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A blood test is a search. *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013). Warrantless searches are unreasonable unless the state demonstrates that an exception to the warrant requirement applies. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007). Consent is an exception to the warrant requirement. *Othoudt*, 482 N.W.2d at 222. The state must prove that consent was voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 2045 (1973); *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011). We determine whether consent was voluntary by examining the totality of the circumstances. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). We consider "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* at 569 (quotation omitted).

Nothing in the record suggests, nor does Olesiak contend, that any aspect of Officer Johnson's conduct, aside from reading the implied-consent advisory, was coercive. The district court based its decision that Officer Johnson had coerced Olesiak to consent entirely on the force of that advisory. It specified that the officer was not

3

"threatening or coercive in his manner, tone, or conduct." But the district court did not have the benefit of the *Brooks* decision, which has since rejected the notion that the criminal penalties for test refusal can alone coerce consent. *Id.* at 570–71.

The commissioner asserts that this case presents substantially the same circumstances that were present in *Brooks*, where the supreme court held that the driver had consented. *See id*. The assertion is accurate. In *Brooks*, police had probable cause to suspect the defendant of driving while impaired, arrested him, and read him the implied consent advisory. *Id.* at 565–66. Brooks spoke to his lawyer and submitted to a chemical test afterward. *Id.* at 571–72. Olesiak's case closely mirrors these facts, and only Brooks's more extensive impaired-driving history distinguishes him from Olesiak. This distinction does not lead to a different result.

We hold that the district court erred when it concluded that Olesiak's consent was coerced and therefore invalid. Because Olesiak's consent was not invalid and he provides no other reason to suppress the test result, we reverse. We do not reach the commissioner's other arguments.

**Reversed.**