*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1493**

State of Minnesota,
Respondent,

vs.

Meghan Kathleen Quigley,
Appellant

**Filed December 15, 2014
Affirmed
Worke, Judge**

Hennepin County District Court
File No. 27-CR-13-11139

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Susan L. Segal, Minneapolis City Attorney, David Bernstein, Assistant City Attorney, Minneapolis, Minnesota (for respondent)

Adam T. Johnson, Meshbesher & Associates, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Johnson, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges her driving-while-impaired (DWI) conviction, arguing that the district court erred in concluding that she consented to the breath test, and that the implied-consent law does not violate the unconstitutional-conditions doctrine. We affirm.

## FACTS

In the early morning hours of April 7, 2013, a Minnesota state trooper was dispatched to a single-vehicle accident. The vehicle was on the shoulder of the road. A witness, also stopped on the shoulder, reported that the vehicle hit a wall.

The trooper approached the vehicle and detected an alcohol odor. Appellant Meghan Kathleen Quigley was in the backseat while a male attempted to change a tire. The trooper asked why the tire was flat, and Quigley said, "Me." When asked if she was driving, Quigley replied, "Yup." Quigley's eyes were bloodshot and watery and she was slurring her words. Quigley was wearing a bar-type wristband and admitted that she consumed four beers. Quigley performed field sobriety tests poorly and her preliminary breath test indicated .17 alcohol content (AC).

The trooper arrested Quigley for DWI and placed her in his squad car without securing her in handcuffs. While the trooper questioned the witness and Quigley's passenger, Quigley made calls on her cell phone. After releasing the witness and waiting for a tow truck to remove Quigley's vehicle, the trooper returned to his squad car and read the implied-consent advisory to Quigley. Quigley indicated that she understood the

2

advisory and wanted to call an attorney. Quigley again placed calls using her cell phone. She then consented to a breath test, which revealed .18 AC.

Quigley moved to suppress her breath-test result. The district court denied the motion, concluding that Quigley consented to the breath test and failed to establish that the implied-consent law is unconstitutional. Quigley agreed to a stipulated-facts proceeding under Minn. R. Crim. P. 26.01, subd. 4, to preserve the pretrial issues for appeal, stipulating to the trooper's report, the video from the squad car, the copy of the implied-consent advisory, and the breath-test result. The district court found her guilty of DWI.

After Quigley filed the notice of appeal, this court granted her motion to stay the appeal pending the release of *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). After the appeal was reinstated, Quigley was granted another stay so that she could petition the district court for postconviction relief, seeking to vacate her conviction and proceed on stipulated facts under Minn. Stat. § 169A.20, subd. 1(5) (2012) (DWI—AC of .08 or more within two hours of driving). The district court found Quigley guilty, and her appeal challenging the pretrial suppression ruling was reinstated.

**D E C I S I O N**

"When a defendant initially files a direct appeal and then moves for a stay to pursue postconviction relief, we review the postconviction court's decisions using the same standard that we apply on direct appeal." *State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012).

3

*Consent*

Quigley first argues that the warrantless breath test was unconstitutional, requiring suppression of the result. The collection of a breath sample is a search under the Fourth Amendment. *Mell v. Comm'r of Pub. Safety*, 757 N.W.2d 702, 709 (Minn. App. 2008). The United States and Minnesota Constitutions prohibit unreasonable searches. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Warrantless searches are per se unreasonable, subject to limited exceptions. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992). The state bears the burden of establishing the existence of an exception to the warrant requirement. *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001).

One exception to the warrant requirement is consent. *Brooks*, 838 N.W.2d at 568.

> For a search to fall under the consent exception, the [s]tate must show by a preponderance of the evidence that the defendant freely and voluntarily consented. Whether consent is voluntary is determined by examining the totality of the circumstances. Consent to search may be implied by action, rather than words. And consent can be voluntary even if the circumstances of the encounter are uncomfortable for the person being questioned. An individual does not consent, however, simply by acquiescing to a claim of lawful authority.

*Id.* at 568-69 (quotation and citations omitted). We review the district court's finding of whether consent was voluntary under the clearly erroneous standard. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011).

Voluntariness of consent is determined by examining "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Brooks*, 838 N.W.2d at 569 (quotation omitted). The nature of the encounter includes what led the

4

officer to suspect the driver of DWI, the officer's request that the driver submit to a test, including whether the driver was read the implied-consent advisory, and whether the driver had the opportunity to consult with an attorney. *Id.* Because the language of the implied-consent advisory makes clear that a person has a choice of whether to submit to testing, "the fact that someone submits to the search after being told that . . . she can say no . . . supports a finding of voluntariness." *Id.* at 572.

In *Brooks*, based on the totality of the circumstances, the supreme court concluded that Brooks voluntarily consented to searches following three DWI arrests because he did not dispute that the police had probable cause to suspect him of DWI, he did not contend that police failed to follow procedures of the implied-consent law, the police read him the implied-consent advisory, and he spoke to an attorney before submitting to testing. *Id*. at 569-70. The court also noted that Brooks was not subject to repeated police questioning and did not spend days in custody before consenting. *Id.* at 571.

Similarly here, based on the stipulated facts, the district court did not err in concluding that Quigley voluntarily consented. Quigley does not dispute that the trooper had probable cause to suspect her of DWI. Nor does she contend that the trooper failed to follow the implied-consent-law procedures. The trooper read the implied-consent advisory to Quigley, which made clear that she had a choice of whether to submit to testing, and she indicated that she understood the advisory. Quigley made phone calls seeking legal advice. Finally, Quigley was not confronted with repeated police questioning or held in custody for an unreasonable length of time. Nothing in the record

5

indicates that Quigley's consent "was coerced in the sense that [her] will had been overborne and [her] capacity for self-determination critically impaired." *See id.*

Although Quigley claims that there is no evidence that she actually contacted an attorney, the stipulated record indicates that Quigley placed phone calls seeking legal advice. Furthermore, *Brooks* states only that a defendant be given an opportunity to consult with an attorney. *See id.* at 572 (stating that "the ability to consult with counsel about an issue supports the conclusion that a defendant made a voluntary decision").

Quigley also claims that she had no choice but to consent to testing because test refusal is a crime. The supreme court in *Brooks* rejected the argument that consent is per se involuntary because of the attendant threat of a criminal charge for test refusal. *See id.* at 570 ("[A] driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test.").

Finally, Quigley argues that her consent was not voluntary because the encounter was coercive, comparing her incident to that in *State v. Dezso*, 512 N.W.2d 877 (Minn. 1994). In *Dezso*, an officer stopped a driver for speeding. 512 N.W.2d at 878. While sitting in the squad car with the driver, the officer noticed as he returned his driver's license, that Dezso tilted his open wallet away from the officer. *Id.* at 879. The officer then asked Dezso repeated questions about whether he could look inside his wallet. *Id.* The officer eventually looked through the wallet and found LSD. *Id.*

In determining whether consent to search the wallet was voluntarily given, the supreme court examined the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said.

6

*Id.* at 880. The court noted that the encounter "took place at night, on a highway, and in the front seat of a parked squad car [and] [t]here appear[ed] to be nothing unusual about the defendant; he was simply a motorist . . . stopped for speeding." *Id.* But the supreme court concluded that consent was not voluntary because the officer's questions "were official and persistent," and were combined with the officer leaning toward the driver, and the driver was unaware that he could refuse the officer's request. *Id.* at 881.

Quigley's reliance on *Dezso* is misplaced. First, there was not repeated questioning in this matter similar to the nature and degree of questioning that occurred in *Dezso*. The questioning in *Dezso* was intrusive regarding the contents of the driver's wallet. Here, the trooper's questions were routine and legitimately relevant in conducting a necessary police investigation. As the supreme court stated, "[t]he police must be able to seek the cooperation and ask questions of individuals if the safety and security of the community is to be preserved." *Id.* at 880. Additionally, although Quigley asserts that "the kind of person" she is must be thoroughly investigated, it is only one factor in our analysis, and like the driver in *Dezso*, there was "nothing unusual" about Quigley; she was simply a motorist whose driving behavior caused a flat tire that led to a DWI investigation and arrest. *See id.*; *see also Brooks*, 838 N.W.2d at 565 (examining "the kind of person" Brooks is through the lens of three DWI incidents in a six-month period).

Quigley asserts that the quick succession of events—she performed field sobriety tests, was arrested, read the implied-consent advisory, and asked to submit to a breath test all before she arrived at the detention center—shows that her consent was not voluntary. She claims that the fact that she was in the squad car when the trooper read the implied-

7

consent advisory made the encounter coercive. But the record simply shows that the trooper was efficient. The trooper had probable cause to suspect Quigley of DWI. He placed her in his squad car while he spoke with the witness and Quigley's passenger. Quigley was not in handcuffs and continuously used her cell phone while the trooper waited for a tow truck to retrieve Quigley's vehicle. There was no reason for the trooper to halt the implied-consent process until arriving at the detention center.

Based on this record, the district court properly concluded that Quigley freely and voluntarily consented to the breath test.[1]

### *Unconstitutional-conditions doctrine*

Quigley also argues that the implied-consent law is unconstitutional because it conditions the privilege to drive on the relinquishment of the constitutional right to be free from unreasonable searches.

In *Missouri v. McNeely*, the Supreme Court approved the use of legal tools to enforce DWI laws and secure the collection of blood-alcohol-concentration (BAC) evidence. 133 S. Ct. 1552, 1566 (2013). These legal tools include "implied consent laws that require motorists, as a condition of operating a motor vehicle within the [s]tate, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense." *Id.* And in *State v. Netland*, the supreme court stated that the unconstitutional-conditions doctrine does not apply when the search is constitutionally permissible. 762 N.W.2d 202, 211-12 (Minn. 2009), *abrogated in part by McNeely*, 133

---

[1] Quigley raises additional challenges to the implied-consent law. We do not need to reach these challenges because we concluded that her consent was voluntary.

S. Ct. 1552, *as recognized in Brooks*, 838 N.W.2d at 567.  Quigley freely and voluntarily consented to the search, making the search constitutional; thus, because the implied-consent law did not authorize an unconstitutional search, her argument that the statute violates the unconstitutional-conditions doctrine fails.

**Affirmed.**