*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1120**

Gregory Charles Van Schoonhoven, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed April 6, 2015
Reversed
Ross, Judge**

Dakota County District Court
File No. 19HA-CV-14-389

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota (for respondent)

Lori Swanson, Attorney General, James E. Haase, Assistant Attorney General, Kristi A. Nielsen, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Kirk, Judge; and Reilly, Judge.

# UNPUBLISHED OPINION

**ROSS**, Judge

Police arrested Charles Van Schoonhoven for driving while impaired, read him the implied-consent advisory, and administered a breath test after he agreed to take one. Because the breath test showed that Van Schoonhoven's alcohol concentration exceeded the .08 per se intoxication limit, the commissioner of public safety revoked his driver's

license. On judicial review, the district court rescinded the revocation because it found that the commissioner had not shown that Van Schoonhoven voluntarily consented to the breath test. We reverse the district court's decision because the evidence cannot support its finding of coercion.

**FACTS**

Just after midnight on January 17, 2014, Dakota County Sergeant Booker Hodges stopped Charles Van Schoonhoven for a traffic violation and suspected that Van Schoonhoven was intoxicated. Deputy Dan Qualy arrived and administered field sobriety tests and a preliminary breath test. Deputy Qualy arrested Van Schoonhoven on suspicion of drunk driving.

Deputy Qualy took Van Schoonhoven to the county jail and read him the implied-consent advisory. Van Schoonhoven said he wanted to speak with an attorney, so the deputy provided him a telephone and telephone directory. Van Schoonhoven made calls from 12:57 to 1:13 a.m., and he spoke with someone. Deputy Qualy then asked if he would take a breath test, and Van Schoonhoven said yes. The test indicated that Van Schoonhoven had an alcohol concentration of .12. The commissioner of public safety consequently revoked his driver's license.

Van Schoonhoven petitioned the district court to reverse the revocation, challenging the admissibility of the breath test. The district court conducted a hearing at which deputies Hodges and Qualy testified to the facts just outlined. The state also offered into evidence the police report. Deputy Qualy states in the report that he checked

2

Van Schoonhoven's criminal history and did not find any previous arrests or convictions for driving or alcohol-related crimes.

Van Schoonhoven testified at the hearing. He remembered that he was told in the advisory that he was required to take a breath test and that refusal to take a test was a crime. His testimony was conflicting. On one hand, he said that the attorney he spoke to just before the test told him it was "a worse crime to refuse the test than it was to take the test," but on the other, Van Schoonhoven said that he "thought he had no choice" but to take the test.

The district court rescinded Van Schoonhoven's revocation. It reached this conclusion by negative implication from the analysis in *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013). It reasoned that Van Schoonhoven is dissimilar to the *Brooks* defendant, whom the supreme court determined had consented to take a chemical test. In particular, the district court here considered that the commissioner offered no evidence that Van Schoonhoven had prior impaired-driving arrests and that he "showed no knowledge of the DWI testing process." The district court concluded that the commissioner "failed to make a sufficient case to establish [that Van Schoonhoven] knowingly and voluntarily consented to the search and waived the requirement under the Fourth Amendment for law enforcement to obtain a warrant prior to the search."

The commissioner appeals the district court's decision rescinding the revocation.

## D E C I S I O N

The commissioner argues that the district court erroneously found that Van Schoonhoven did not voluntarily consent to the breath test. The federal and state

constitutions protect citizens from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A breath test constitutes a search under the Fourth Amendment. *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 616–17, 109 S. Ct. 1402, 1413 (1989); *see State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). Warrantless searches are unreasonable unless an exception to the warrant requirement applies, *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007), and consent is an exception to the warrant requirement. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992). For the consent exception to apply, the state must show that consent was voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 2045 (1973); *State v. Deide*, 795 N.W.2d 836, 846 (Minn. 2011). Whether a driver voluntarily consented is a fact finding, which we will reverse only if the district court's finding is clearly erroneous. *Deide*, 795 N.W.2d at 846.

Whether consent is voluntary depends on the totality of the circumstances. *Brooks*, 838 N.W.2d at 568. The *Brooks* court included several factors in the mix of those circumstances. *Id*. at 569. The district court clearly erred when it found a lack of consent here based on its distinguishing of Van Schoonhoven from the defendant in *Brooks*. The district court stated, "Unlike the defendant in *Brooks*, [Van Schoonhoven] showed no knowledge of the DWI testing process." *Brooks* does not require that a defendant have a drunk-driving record or specific knowledge of the process before his informed and apparently voluntary decision to take a breath test qualifies as voluntary consent.

On the totality of the circumstances in this record, it is clear that the state established that Van Schoonhoven voluntarily consented. Deputy Qualy arrested Van

4

Schoonhoven for impaired-driving based on his performance on the field sobriety tests, the result of the preliminary breath test, and Van Schoonhoven's admission that he had been drinking. The deputy read him the implied-consent advisory and requested a breath test. Van Schoonhoven called and spoke with an attorney about what he should do. He ostensibly consented to the breath test, saying "yes" when asked if he would take the test, and he provided an adequate breath sample without any reference to being pressured to do so. The *Brooks* court looked closely at the circumstances presented and agreed with the district court that "nothing in the record suggests that Brooks was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *Id*. at 571 (quotation omitted). We have similarly assessed the record and see nothing in it to suggest that Van Schoonhoven was coerced under the same meaning of coercion.

Like the *Brooks* defendant, Van Schoonhoven argues that he was coerced because he did not feel that he had a choice whether or not to submit to the test. The district court accepted this assertion by looking only to Van Schoonhoven's contention that he "thought [he] had no choice" except to take the test. The court overlooked his testimony that he agreed to take the test specifically because he learned from his lawyer that "[i]t was a *worse* crime if [he] refused." The overlooked statement of Van Schoonhoven's rationale establishes that he knew he had a choice between taking the test and refusing to take the test in the same way the *Brooks* defendant knew he had a choice. Whatever pressure Van Schoonhoven experienced from his awareness of the option of either failing the test (with possible conviction for impaired driving) or refusing the test (with possible

conviction for test refusal) is in a theoretical sense coercion, but it is not the sort of pressure that amounts to the unconstitutional coercion that would render an apparent consent involuntary. The supreme court has rejected the notion that this no-better-choice conundrum amounts to coercion and a finding of involuntariness: "[A] driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 570. We likewise reject Van Schoonhoven's argument that he was coerced by knowing the heightened punishment he might face for refusing the test. Because this is the only evidentiary basis for the district court's implicit finding that Van Schoonhoven's apparently voluntary consent was involuntary due to coercion, we reverse the district court's clearly erroneous finding.

**Reversed.**