*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0927**

Tara Kay O'Connor, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed April 27, 2015
Affirmed
Ross, Judge**

Dakota County District Court
File No. 19HA-CV-13-4951

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota (for appellant)

Lori Swanson, Attorney General, James E. Haase, Assistant Attorney General, Adam Kujawa, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Kirk, Judge; and Reilly, Judge.

## U N P U B L I S H E D   O P I N I O N

**ROSS**, Judge

Tara O'Connor agreed to take a breath test after a deputy arrested her for driving while intoxicated and read her the implied-consent advisory. Because the results of O'Connor's breath test showed that her alcohol concentration exceeded the .08 per se intoxication limit, the commissioner of public safety revoked her driver's license.

O'Connor petitioned for judicial review, and the district court sustained the revocation. Because no facts support her contention that her consent to be tested resulted from coercion, we affirm.

## FACTS

Dakota County Deputy Sheriff Timothy Samuelson stopped Tara O'Connor's car on a November 2013 afternoon. Deputy Samuelson noticed signs of intoxication, so he conducted field sobriety tests. Because the tests indicated that O'Connor was impaired, the deputy arrested her and took her to jail. There he read her the implied-consent advisory and asked if she wanted to speak with an attorney before deciding whether to submit to a breath test. O'Connor said she did, and Deputy Samuelson gave her a telephone. Deputy Samuelson noted in his report that O'Connor contacted a family friend who was an attorney. O'Connor finished the call and the deputy asked if she would take the test. O'Connor said that she would. She provided two adequate breath samples that showed that her alcohol concentration exceeded the per se intoxication limit of .08.

The department of public safety therefore revoked O'Connor's driver's license. She petitioned for judicial review. The district court conducted a hearing, and Deputy Samuelson testified to the facts just outlined. The district court found that O'Connor voluntarily consented to the breath test and sustained the revocation. O'Connor appeals.

## DECISION

O'Connor argues that the district court erroneously found that she voluntarily consented to the breath test. Her argument arises from our constitutions. The federal and state constitutions protect citizens from unreasonable warrantless searches and seizures.

2

U.S. Const. amend. IV; Minn. Const. art. I, § 10. A breath test constitutes a search under the Fourth Amendment. *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 616–17, 109 S. Ct. 1402, 1413 (1989); *see State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). Warrantless searches are unreasonable unless an exception to the warrant requirement applies. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007). Consent is an exception to the warrant requirement. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992). But consent must be voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 2045 (1973); *State v. Deide*, 795 N.W.2d 836, 846 (Minn. 2011). Whether consent is voluntary depends on the totality of the circumstances. *Brooks*, 838 N.W.2d at 568.

The simple facts here support the district court's finding of voluntary consent, which is a question of fact that we review for clear error. *Diede*, 795 N.W.2d at 846. Deputy Samuelson pulled over O'Connor's car, noticed signs of O'Connor's intoxication, and arrested O'Connor for drunk driving after field sobriety tests indicated her impairment. O'Connor heard the implied-consent advisory and spoke to an attorney. She then agreed to take a breath test on request, and she gave two adequate breath samples. O'Connor nevertheless argues that the test was invalid because her ostensibly voluntary consent was actually coerced. She maintains that "[e]vidence that [she] agreed to a warrantless search, standing alone, is insufficient as a matter of law to meet the burden of proving that this agreement was actual, constitutionally sufficient consent."

O'Connor's argument fails under the totality of the circumstances, which inform us that all of the facts, not merely O'Connor's ostensible agreement, support a finding of

3

voluntary consent. And no facts support a finding of coercion. O'Connor builds her claim of coercion by highlighting the common facts that accompany virtually all arrests—a law enforcement officer "placed [her] in handcuffs, locked her in the rear of his squad vehicle, and spirited her out of the public eye to jail." These same facts existed in *Brooks*, a case in which the supreme court held that the circumstances indicated voluntary consent. *See Brooks*, 838 N.W.2d at 566. O'Connor does not convincingly explain why these facts should lead to a different result here. She asserts chiefly that the implied-consent advisory is inherently coercive because it informs drivers that they are required to submit to a test or face an additional criminal charge. But the supreme court faced the same circumstances in *Brooks*, and it held that the advisory is not unconstitutionally coercive. *Id*. at 570.

The district court did not clearly err by finding that O'Connor voluntarily consented to the test.

**Affirmed.**

4